**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| Black Widow Termite & Pest Control Corp., | |
| Plaintiff, | Civil Action No.:3:23-cv-01246 |
| vs. | |
| Black Widow Pest Specialist LLC, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendant adopted a logo confusingly similar to Plaintiff's federally registered and incontestable trademarks for identical pest remediation services, and there is substantial evidence of actual consumer confusion:

| Plaintiff's BLACK WIDOW logos | Defendant's BLACK WIDOW logo |
|---|---|
|  |  |
|  |  |

Plaintiff respectfully submits this Memorandum of Law in support of its Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56(a). The undisputed material facts establish that Plaintiff is entitled to judgment as a matter of law as to liability on all claims asserted in the Complaint, as well as on Defendant's counterclaims and affirmative defenses.

Plaintiff holds longstanding, incontestable rights to its BLACK WIDOW logo, as well as registered trademark rights in the BLACK WIDOW name itself, generally for pest remediation services. The record conclusively demonstrates: (1) Plaintiff has valid, incontestable trademark rights in its BLACK WIDOW marks, with priority dating back long before Defendant began its business; (2) Defendant adopted the BLACK WIDOW mark in 2021, nearly two decades after Plaintiff's first use and several years after Plaintiff's logos became incontestable in 2019, for identical pest control services; (3) The parties' logos are strikingly similar in both appearance and commercial impression; (4) Defendant's adoption and use of BLACK WIDOW for pest control services has caused actual consumer confusion, and at least sixteen documented instances of actual consumer confusion exist; (5) Defendant continues to use the BLACK WIDOW mark for pest control services despite knowledge of the growing instances of actual consumer confusion; (6) BLACK WIDOW is not descriptive of any services provided by Plaintiff or Defendant; and (7) Defendant has not produced any admissible evidence or identified any witnesses with knowledge sufficient to establish that any alleged third-party use of BLACK WIDOW predates Plaintiff's rights.

As detailed in Sections II and III below, Defendant's counterclaims fail as a matter of law and are wholly unsupported by admissible evidence. Specifically, Defendant cannot maintain its fraud claim because Defendant has not produced a single piece of evidence, documentary or

testimonial, showing that Plaintiff had knowledge of any third-party use of BLACK WIDOW prior to filing its latest trademark application. Nor has Defendant offered any admissible proof that any such third-party use actually occurred before Plaintiff's priority date or that such use has been continuous. Despite having ample opportunity during discovery, Defendant did not subpoena relevant documents, depose any alleged third-party users, or submit any sworn statements from those individuals. None of the witnesses identified in Defendant's initial disclosures or interrogatory responses have any knowledge of the alleged third-party use of BLACK WIDOW. Defendant also failed to provide any evidence of harm, lost business, or damages attributable to Plaintiff's use of the BLACK WIDOW mark. Likewise, there is no evidence in the record supporting the alleged misconduct or statutory defenses raised in Defendant's second, ninth, tenth and twelfth affirmative defenses. But fundamentally, with respect to the Defendant's counterclaim for trademark infringement, Plaintiff owns incontestable rights to its BLACK WIDOW logo – this means Defendant cannot stop Plaintiff from using the BLACK WIDOW mark in Connecticut or anywhere else in the country because the incontestability statute precludes Defendant's counterclaim as a matter of law 15 USC §1065. ("the right of the owner to use such registered mark in commerce for the goods or services on or in connection with which such registered mark…shall be incontestable").  Yet Defendant seeks to maintain a counterclaim to prevent Plaintiff from using its registered and incontestable logo that contains the words BLACK WIDOW.

While a court must view the evidence in the light most favorable to the non-moving party, summary judgment cannot be defeated by mere speculation or conclusory allegations. *See D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) ("The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing

that its version of the events is not wholly fanciful.") Here, there is a complete lack of evidence to support Defendant's claims.

Accordingly, because Defendant has failed to raise a genuine dispute of material fact supported by admissible evidence – or even evidence that could conceivably be admitted at trial if the right witnesses were to appear[1] – and because Plaintiff has established its entitlement to relief as a matter of law, summary judgment should be granted in Plaintiff's favor on all claims, counterclaims and the specified affirmative defenses.

## **BACKGROUND**

Plaintiff is the senior user and federal trademark registrant of the BLACK WIDOW brand in connection with pest and termite control, making continuous use of the mark since 2003. (Pl. 56(a)(1) ¶ 143). Plaintiff has promoted and offered its BLACK WIDOW pest control services in interstate commerce, including in New York and New Jersey. Additionally, several of Plaintiff's New York-based customers reside in Connecticut and own or manage properties in New York City. (Pl. 56(a)(1) ¶ 147). Plaintiff's BLACK WIDOW trademarks are registered with the United States Patent and Trademark Office and all but one has achieved incontestable status under 15 U.S.C. § 1065[2]. These registrations afford Plaintiff the exclusive right to use the BLACK WIDOW name and logo in connection with pest control services nationwide. *See* 15 U.S.C. §§ 1115(a)-(b).

Plaintiff is also licensed to provide wildlife management services in the disputed region, i.e., Connecticut. (Pl. 56(a)(1) ¶ 158). Thus, Plaintiff satisfies the legal prerequisites for obtaining injunctive relief in this region. *Dawn Donut v. Hart's Food Stores*, 267 F.2d 358 (2d Cir. 1959);

---

[1] Again, no witnesses that could support Defendant's allegations have been identified during discovery. It would be wholly improper for any Defendant witness to produce supporting testimony at trial.

[2] The remaining registration, U.S. Trademark Registration No. 7,466,919, registered in 2024 and has not yet accrued the requisite number of years for incontestability. There is little question that the registration will become incontestable upon submission of a Section 15 Declaration of Incontestability between the 5th and 6th years of registration (between August 6, 2029, and August 6, 2030).

*Guthrie Healthcare System v. ContextMedia, Inc.*, 873 F.3d 160 (2d Cir. 2017).

In 2021, Defendant adopted an almost identical BLACK WIDOW logo for use in connection with pest control services. (Pl. 56(a)(1) ¶ 28). The parties' logos are undeniably similar in both appearance and commercial impression. Both Plaintiff's and Defendant's logos prominently feature the identical wording "BLACK WIDOW," as well as a spider design, the color red, the color black, and the word "PEST". (Pl. 56(a)(1) ¶¶ 32-36; Ex. F, Blake Black Dep. Sept. 24, 2024 at 197:12-204:13). A side-by-side comparison of the two logos, shown below, illustrates their overall similarity and underscores the potential for consumer confusion:

| Plaintiff's BLACK WIDOW logo | Defendant's BLACK WIDOW logo |
|---|---|
|  | |

Indeed, the Court has already acknowledged that the parties' logos are similar. (Pl. 56(a)(1) ¶ 30). That conclusion is further confirmed by the sixteen (16) instances of actual consumer confusion that have been documented between November 2023 and May 2025. (Pl. 56(a)(1) ¶¶ 55-70). Among those confused was Bridgette Burr, a consumer who fits the prototypical profile of a pest control customer. Defendant performed work in Ms. Burr's home on two separate occasions. Both times, Ms. Burr saw Defendant's branded trucks and uniforms. (Pl. 56(a)(1) ¶ 72). Ms. Burr testified that despite having previously seen Defendant's branding on two separate occasions, and even after being shown both logos during her deposition, she was still unable to distinguish between Plaintiff's and Defendant's logos. (Pl. 56(a)(1) ¶¶ 71-73). Her testimony is

persuasive evidence of actual marketplace confusion, particularly because she reflects the perspective of an ordinary consumer as opposed to an industry insider. While Defendant's representatives may argue that the logos are substantially different, the law does not assess confusion from their perspective. Rather, the law focuses on the perception of ordinary consumers, the true target audience who are more likely to be confused, not the business owners who are intimately familiar with the marks through daily exposure. *See 1-800 Contacts, Inc. v. JAND, Inc*., 119 F.4th 234, 248 (2d Cir. 2024) ("[t]he crucial issue…is whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question.") Fundamentally, there are sixteen (16) documented instances where consumers were unable to distinguish between Plaintiff and Defendant, including a well-documented instance from a video deposition transcript in which a subpoenaed witness, Ms. Burr, despite her involvement in this litigation, could not tell the difference. Simply put, Defendant has presented no evidence from actual consumers who can distinguish the marks and has failed to identify any consumer witnesses in their discovery responses who could competently testify to that effect.  By contrast, the only "evidence" Defendant offers in opposition consists of conclusory, self-serving testimony from its principal and a former employee – neither of whom represent the average consumer, and both of whom are intimately familiar with Defendant's branding.

In short, Plaintiff's priority and incontestable trademark rights, the logo similarity and the existence of actual confusion are all firmly established. Defendant lacks any admissible relevant evidence. Its defenses and counterclaims rest entirely on conjecture and unsupported assertions.

## ARGUMENT

**I.    DEFENDANT'S USE OF THE "BLACK WIDOW" MARK INFRINGES PLAINTIFF'S REGISTERED MARKS UNDER THE LANHAM ACT**

In order to prevail on a claim for trademark infringement under § 32 of the Lanham Act, 15 U.S.C. § 1114, Plaintiff must establish that Defendant (1) without consent, (2) used in commerce, (3) a reproduction, copy or colorable imitation of plaintiff's registered mark, as part of the sale or distribution of goods or services, and (4) that such a use is likely to cause confusion. *See Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir. 1993).

Here, there is no genuine dispute that Defendant's use of BLACK WIDOW satisfies each of these statutory elements. Defendant has used the identical BLACK WIDOW mark in commerce in connection with pest control services since at least 2021 (Pl. 56(a)(1)¶ 28), without Plaintiff's consent (*id.*¶ 24). Defendant's use of the identical BLACK WIDOW mark in commerce in connection with pest control services not only creates a likelihood of confusion; rather, such use has resulted in multiple, documented instances of actual consumer confusion (Pl. 56(a)(1) ¶¶ 53-75). Such evidence provides confirmation that the confusion is not hypothetical, but real and ongoing.

Courts in the Second Circuit assess likelihood of confusion using the multifactor test set forth in *Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir.1961). The eight nonexclusive factors are:

> (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market. *Id.*

Accordingly, to determine whether Plaintiff can prevail on its claim of trademark infringement,

the Court must evaluate the *Polaroid* factors to determine whether Defendant's use of the BLACK WIDOW mark is likely to cause confusion. Each of the relevant *Polaroid* factors strongly supports a finding of infringement. The presence of actual confusion further tilts the analysis decisively in Plaintiff's favor, warranting summary judgment in Plaintiff's favor.

### A. Strength of Plaintiff's Mark – *Polaroid* Factor 1

The first *Polaroid* factor, the strength of Plaintiff's mark, encompasses two related concepts, both of which relate significantly to likelihood of consumer confusion: "inherent distinctiveness" and "acquired distinctiveness." *See Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 147 (2d Cir. 2003). Plaintiff submits that the first *Polaroid* factor weighs in its favor because Plaintiff's BLACK WIDOW marks have acquired distinctiveness through Plaintiff's extensive and exclusive use of such marks in commerce.

Specifically, U.S. Trademark Registration Nos. 4,624,108 (the "'108 Registration'") and 4,624,109 (the "'109 Registration'") have both attained incontestable status under Section 15 of the Lanham Act, 15 U.S.C. § 1065 (Pl. 56(a)(1) ¶¶ 2-5, 153). Defendant admitted incontestability in their Answer (*id.* ¶¶ 8, 154-155). As set forth in 15 U.S.C. § 1115(a) and (b), the incontestable status of the '108 and '109 Registrations constitutes conclusive evidence of Plaintiff's ownership of the marks, valid use in commerce, and exclusive right to use the marks in connection with the registered pest control services. *See* 15 U.S.C. §§ 1115(a)-(b).

Further, Plaintiff's more recent U.S. Registration No. 7,466,919 (the "'919 Registration") for the BLACK WIDOW word mark issued on the Principal Register without a disclaimer and after the USPTO accepted Plaintiff's claim of acquired distinctiveness under Section 2(f) (Pl. 56(a)(1) ¶¶ 6-7). This confirms that the USPTO recognizes Plaintiff's BLACK WIDOW as having acquired secondary meaning through Plaintiff's longstanding and exclusive commercial use of the

mark. *See* 15 U.S.C. § 1052(f); *see also* Pl. 56(a)(1) ¶¶ 15-20. Importantly, under TMEP § 1212.05(b), the concept of "substantially exclusive use" allows for some infringing or inconsequential uses by others without invalidating a claim of acquired distinctiveness. *See* 15 U.S.C. § 1052(f); 37 C.F.R. §2.41(a)(2); *L.D. Kichler Co. v. Davoil, Inc.*, 192 F.3d 1349, 1352, 52 USPQ2d 1307, 1309 (Fed. Cir. 1999). Defendant's primary attack on the '919 Registration is based on the fact that its underlying application was filed the day before Plaintiff sent the cease-and-desist letter that started this dispute. But this timing is irrelevant as a matter of law. *See L.D. Kichler Co. v. Davoil, Inc.*, 192 F.3d 1349, 1352, 52 USPQ2d 1307, 1309 (Fed. Cir. 1999) ("As the Trademark Manual of Examining Procedure, § 1212.05(b), recognizes: The five years of use does not have to be exclusive, but may be 'substantially' exclusive. This makes allowance for use by others which may be inconsequential or infringing and which therefore does not necessarily invalidate the applicant's claim"). In fact, the fact that Plaintiff sent a cease-and-desist letter after filing the '919 Registration underscores that Plaintiff viewed Defendant's use of the BLACK WIDOW mark as infringing.

Thus, Plaintiff's acquired distinctiveness in its BLACK WIDOW mark is supported by: (1) Plaintiff's continuous use of its BLACK WIDOW marks since 2003 (Pl. 56(a)(1) ¶¶ 142-143); (2) the fact that Plaintiff is the only owner of Class 037 marks containing the words "BLACK" and "WIDOW" for "pest" services (*id.* ¶¶ 15-20); (3) the incontestable status of the '108 and '109 Registrations (*id.* ¶¶ 2-5, 153); and (4) the USPTO's acceptance of Plaintiff's Section 2(f) claim in U.S. Serial No. 98/124,482, and eventual registration of the application on the Principal Register without a disclaimer, following an examiner's search of the Register that revealed no conflicting marks (*id.* ¶¶ 6-7, 106).

With its continuous interstate use, ownership of two federally registered incontestable

trademarks, and ownership of a third trademark that issued without disclaimer under a 2(f) claim of acquired distinctiveness, it is difficult to imagine a mark that enjoys greater strength than Plaintiff's BLACK WIDOW family of marks.

Accordingly, the first *Polaroid* factor – the strength of Plaintiff's mark – weighs heavily in favor of Plaintiff. Plaintiff's BLACK WIDOW mark is legally and commercially strong, precisely the kind of source identifier that the Lanham Act is designed to protect. But, at minimum, Defendant admitted during his deposition that the factor is neutral. (*id.* ¶ 27).

**B.  Similarity of the Marks – *Polaroid* Factor 2**

The second *Polaroid* factor, the similarity between the parties' marks, examines the overall impression created by the marks, considering the totality of factors that could cause confusion amongst consumers. *See Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 386 (2d Cir. 2005) citing *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1078 (2d Cir. 1993). Specifically, when comparing marks, "[t]he proper test is not a side-by-side comparison of the marks, but instead whether the marks are sufficiently similar in terms of their commercial impression such that [consumers] who encounter the marks would be likely to assume a connection between the parties." *See* TMEP §1207.01(b); *see also Cai v. Diamond Hong, Inc.,* 901 F.3d 1367, 1373, 127 USPQ2d 1797, 1801 (Fed. Cir. 2018) (quoting *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1368, 101 USPQ2d 1713, 1721 (Fed. Cir. 2012). Factors considered when determining whether two marks are similar include: appearance, sound and connotation. *See* TMEP §1207.01(b); *see also Recot, Inc. v. M.C. Becton,* 214 F.3d 1322, 1329, 54 USPQ2d 1894, 1899 (Fed. Cir. 2000). Importantly, the proper focus is on the recollection of the average purchaser, who retains a general rather than specific impression of trademarks. *See* TMEP §1207.01(b); *see also In re Ox Paperboard*, LLC, 2020 USPQ2d 10878, at *4 (TTAB 2020) citing *In re Bay State*

*Brewing Co.*, 117 USPQ2d 1958, 1960 (TTAB 2016); *In re St. Helena Hosp.*, 774 F.3d 747, 750-51, 113 USPQ2d 1082, 1085 (Fed. Cir. 2014).

Bridgette Burr exemplifies the "average purchaser, who retains a general rather than specific impression of trademarks." When shown the parties' logos side by side, she was unable to distinguish them and mistakenly identified Plaintiff's logo as belonging to the company who visited her home on two separate occasions, when it was, in fact, Defendant. (Pl. 56(a)(1) ¶¶ 39-40). Furthermore, there are numerous other instances of documented actual confusion by other of Defendant's customers who could not distinguish between Plaintiff's and Defendant's branding. (*id.* ¶¶ 56-58, 64-69).

Both parties use BLACK WIDOW alone (i.e., without stylization), and as part of a logo. When used as a word mark, Plaintiff and Defendant both use the identical mark BLACK WIDOW for identical pest control services creating an overwhelming likelihood of confusion. (See Ex. L at 2, previously marked as PX-62 at Blake Black Dep. April 23, 2025; Dkt. 48-8 at 2). Namely, Defendant's BLACK WIDOW word mark is identical in appearance, sound and connotation to Plaintiff's BLACK WIDOW trademark registered under the '919 Registration (Pl. 56(a)(1) ¶ 29).

Furthermore, Defendant's BLACK WIDOW logo is confusingly similar to Plaintiff's BLACK WIDOW logo. See Ex. G. Specifically, as acknowledged by Defendant's principal, Blake Black, both logos incorporate the same key elements: (1) the words "BLACK WIDOW," (2) the design of a spider, (3) the color red, (4) the color black, and (5) the word "PEST". *See* Pl. 56(a)(1) ¶¶ 30-36. These overlapping visual and textual features create a nearly indistinguishable commercial impression, and there is concrete evidence from an actual consumer to confirm this. Specifically, Bridgette Burr, a consumer who encountered Defendant's logo during the provision of pest control services at her mother's home. Ms. Burr testified that, even after being shown both

logos during her deposition, she was unable to distinguish between Plaintiff's and Defendant's logos. *See* Pl. 56(a)(1) ¶¶ 37-40. When shown Plaintiff's logo in isolation, she thought it was Defendant's and when shown the two side by side, she could not identify which company came to her house. (Pl. 56(a)(1) ¶¶ 39-40). This is precisely the type of consumer confusion the Lanham Act seeks to prevent.

The near-identical nature of the marks – both in wording and design – used in the same industry reinforces likelihood of confusion as to source, sponsorship or affiliation. Accordingly, the second *Polaroid* factor strongly favors Plaintiff.

### C. <u>Proximity of the Services – *Polaroid* Factor 3</u>

The third Polaroid factor, the proximity of the products or services, weighs heavily in favor of Plaintiff. This factor assesses the extent to which the parties' respective goods or services compete in the same market or appeal to the same class of consumers. *See Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir.1961).

Here, Defendant has stipulated in the Rule 26(f) report that the pest control services "offered by both Plaintiff and Defendant under the term BLACK WIDOW appear to be in many cases identical but at least substantially similar." (Dkt. 16 at 5; Pl. 561. ¶ 42).

As evidenced by Plaintiff's U.S. Registration Nos. 4,582,084, 4,624,108, 4,624,109 and 7,466,919, Plaintiff's BLACK WIDOW marks cover "termite and pest control" services, including "termite and pest control services other than for agriculture, aquaculture, horticulture and forestry," and services directed toward "commercial buildings" and "residential homes." (See Pl. 56(a)(1) ¶¶ 43, 45, 47 and 49). Defendant also uses its BLACK WIDOW mark in connection with termite and pest control" services, including "termite and pest control services other than for agriculture, aquaculture, horticulture and forestry," and services directed toward "commercial buildings" and

"residential homes," as confirmed by Defendant's principal, Blake Black (See Pl. 56(a)(1) ¶¶ 44, 46 and 48).

The overlap in the nature, scope, and channels of trade for these services leaves no material factual dispute as to proximity. Both parties offer substantively indistinguishable services under the same mark, targeting the same customer bases. These undisputed facts establish that the services are directly proximate in the marketplace. Accordingly, the third *Polaroid* factor favors Plaintiff and strongly supports a finding of likelihood of confusion.

### D.  **"Bridging the Gap" – *Polaroid* Factor 4**

The fourth Polaroid factor, evidence that the senior user may "bridge the gap", considers the likelihood that the senior user will expand into the junior user's market, or that consumers will perceive the senior user as likely to do so. *See Star Indus., Inc. v. Bacardi & Co*., 412 F.3d 373, 387 (2d Cir. 2005).

Here, Plaintiff has already taken concrete steps to bridge any potential geographic or commercial "gap" that may exist between the parties. Specifically, while Plaintiff has shown existing operations in New York and New Jersey, several of Plaintiff's New York-based customers reside in Connecticut and own or manage properties in New York City. (Pl. 56(a)(1) ¶ 147). Moreover, Plaintiff has obtained a wildlife license in Connecticut (Pl. 56(a)(1) ¶ 158), indicating Plaintiff's plans for continued growth and expansion in that region. However, when there is evidence of actual confusion, as discussed in the next section, any geographic "gap" is largely irrelevant. *See generally Guthrie Healthcare System v. ContextMedia, Inc*., 873 F.3d 160 (2d Cir. 2017).

Furthermore, while the New York-Connecticut state line is a formal boundary, is functionally blurred in the consumer context due to the high volume of daily commuting between

the two regions. According to U.S. Census data, approximately 105,000 Connecticut residents held jobs in New York state in 2022. Of those, roughly 54,000 commuted specifically to New York City, with Fairfield County residents accounting for nearly 75% of that figure. (See Exhibit V, CTData Collaborative, https://www.ctinsider.com/projects/2025/connecticut-live-work/.)[3]

Moreover, Plaintiff and Defendant offer nearly identical pest control and wildlife services, targeting overlapping customer bases. As such, Plaintiff maintains that the parties offer services which already exist in competitive proximity, and no meaningful "gap" exists. In such circumstances, the Second Circuit has found the fourth *Polaroid* factor to be irrelevant to the overall analysis. *See Star Indus., Inc. v. Bacardi & Co*., 412 F.3d 373, 387 (2d Cir. 2005).

Even if Defendant were to argue that Plaintiff currently has no customers or operations in Connecticut, Connecticut is well within Plaintiff's reasonable zone of expansion. As discussed above, Plaintiff is already licensed by the State of Connecticut to provide wildlife management services, further evidencing its concrete steps toward expansion into the region. *See Dawn Donut v. Hart's Food Stores*, 267 F.2d 358 (2d Cir. 1959); *see also Guthrie Healthcare System v. ContextMedia, Inc*., 873 F.3d 160 (2d Cir. 2017). Plaintiff's principal office is 45 miles from downtown Manhattan, where it conducts much of its business, but only 6 miles from the Connecticut border, 15 miles from Stamford, and 35 miles from Bridgeport – major population centers that are logistically more accessible than portions of New York City. The proximity and ease of access to Connecticut strongly support the conclusion that Connecticut is within Plaintiff's reasonable zone of expansion.

Nevertheless, to the extent this factor remains relevant, Plaintiff's ability and authorization to operate in Connecticut, bridges any alleged geographic "gap" and supports a finding that the

---

[3] To the extent judicial notice is required, Plaintiff is filing a separate Motion for Judicial Notice herewith.

fourth *Polaroid* factor weighs in Plaintiff's favor.

### E.  <u>Evidence of Actual Consumer Confusion – *Polaroid* Factor 5</u>

Defendant's use of Plaintiff's BLACK WIDOW mark has caused actual consumer confusion (Pl. 56(a)(1) ¶¶ 52-75). Plaintiff's evidence of actual confusion goes beyond what is required under the Lanham Act, as "it is black letter law that actual confusion need not be shown to prevail under the Lanham Act since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source." *Savin Corp. v. Savin Group*, 391 F.3d 439 (2d Cir. 2004) citing *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986). Courts in the Second Circuit have made clear that evidence of actual confusion is the strongest proof supporting a finding of likelihood of confusion, and even minimal evidence is difficult to rebut. *See Savin Corp. v. Savin Group*, 391 F.3d 439 (2d Cir. 2004) citing *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 489 (5th Cir. 1971).

> There can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion. Moreover, reason tells us that while very little proof of actual confusion would be necessary to prove the likelihood of confusion, an almost overwhelming amount of proof would be necessary to refute such proof.

*Id.* (emphasis added).

Here, there is a robust and consistent record of actual confusion (Pl. 56(a)(1) ¶¶ 53-75). After receiving several misdirected inquiries from customers, Plaintiff implemented a process to contemporaneously document these incidents (Pl. 56(a)(1) ¶ 53). The resulting records, including phone call notes and internal emails, show a pattern of real-world confusion beginning before the litigation and continuing up to the present day. (Pl. 56(a)(1) ¶¶ 54–70).

This confusion includes multiple examples of Defendant's customers mistakenly contacting Plaintiff to request or discuss services, including Richelle Burr, David Cass, Charlene Jenkins, Herica Campos, Nicole Brown (FAD Mechanical), Charles Engle, Michele Rau, Laura

Ledan, and David Cook (Letizia's Pizza). (Pl. 56(a)(1) ¶¶ 56-58, 64-69). Some of these customers have expressed confusion due to the similarities between the parties' logos. For example, one customer stated: "your guy came with a truck with the spider on it and I looked up the company online to get the number, there is only one Black Widow, right?" (Ex. I at P000891); while another customer who mistakenly contacted Plaintiff after conducting an online search for Defendant's number stated that the trucks of company he was serviced by (i.e., Defendant) had a logo which was similar to Plaintiff's (Ex. I at P000888). There are also numerous examples of referral sources and pest control industry professionals mistakenly contacting Plaintiff while attempting to reach Defendant. (Pl. 56(a)(1) ¶¶ 59, 63, 75). Some customers even expressed an inability to distinguish between the companies despite prior, direct interactions with Defendant's branding. (Pl. 56(a)(1) ¶¶ 71-73).

Notably, confusion has also flowed in the other direction – Defendant has received communications from customers and industry professionals who confused Defendant with Plaintiff. (Pl. 56(a)(1) ¶¶ 74-75). This further underscores the serious and ongoing marketplace harm and consumer confusion caused by Defendant's unauthorized use of Plaintiff's BLACK WIDOW mark.

And, to reiterate, Bridgette Burr still could not distinguish between the two companies or their logos, despite Defendant having serviced her home on two separate occasions. (Pl. 56(a)(1) ¶ 40).

The volume, consistency, and diversity of these documented incidents establish clear, unambiguous evidence of actual confusion. Thus, under well-settled Second Circuit precedent, the fifth *Polaroid* factor weighs strongly in Plaintiff's favor.

### F.  Evidence of Bad Faith – *Polaroid* Factor 6

The sixth *Polaroid* factor considers whether Defendant acted in good faith in adopting the BLACK WIDOW mark. *See Country Floors Inc. v. Mizak*, No. 3:91-cv-628 (JAC), 1993 BL 9674, at *4 (D. Conn. June 10, 1993). While this factor traditionally focuses on intent at the time of adoption, courts have emphasized that the *Polaroid* analysis must be applied flexibly and contextually. *See Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co*., 799 F.2d 867, 875 (2d Cir. 1986). Moreover, intentional copying is not required under the Lanham Act, and a defendant's subjective intent is not determinative of whether consumers are likely to be confused. *See id.*; *see also Country Floors Inc. v. Mizak*, No. 3:91-cv-628 (JAC), 1993 BL 9674, at *4 (D. Conn. June 10, 1993).

Defendant was presented with Plaintiff's logo via a text message from a referral source and made no effort to investigate the company behind the mark. (Ex. F, Blake Black Dep. Sept. 24, 2024 at 188:16-23). But, more significantly, Defendant received formal notice of Plaintiff's rights in the form of a letter on August 10, 2023, and thereafter continued to receive ongoing monthly or quarterly evidence of actual confusion, yet took no action to prevent or remedy it. (Exhibits C, M). Then, after Plaintiff's word mark registration issued, Defendant removed the spider design component from its website, effectively placing more emphasis on the BLACK WIDOW verbiage and further aligning its branding with Plaintiff's registered rights. (Pl. 56(a)(1) ¶¶ 96-98). Defendant continued using the BLACK WIDOW mark to offer its pest control services despite: (1) initially being notified of Plaintiff's prior rights on August 10, 2023 (Pl. 56(a)(1) ¶ 24); (2) institution of this litigation; and (3) receiving numerous instances of actual consumer confusion between December 2023 and May 2025 (Pl. 56(a)(1) ¶¶ 80-93). In the face of Plaintiff's established rights and documented instances of confusion, Defendant took no meaningful steps to

discontinue its use of the BLACK WIDOW name, logo or branding. (Pl. 56(a)(1) ¶¶ 81-82).

In fact, Defendant persisted in its use even after being served with a copy of Plaintiff's Principal Register word mark registration on August 6, 2024, which issued without a disclaimer and protects the term BLACK WIDOW regardless of stylization. (Pl. 56(a)(1) ¶ 98). Following this, Defendant removed the spider design from its website, leaving the emphasized BLACK WIDOW name, bringing its branding closer in appearance to Plaintiff's word mark. (Pl. 56(a)(1) ¶¶ 96-97). If the spider designs featured in the parties' logos are truly "different," as Blake Black claims (Ex. F at 194:16-18, 196:8-14), why remove the very element he argues distinguishes his mark – especially when the remaining element, the "BLACK WIDOW" wording, is identical? The only plausible explanation is that it was a calculated move made in bad faith. While Mr. Black testified that the spider was inconsistent with his overall branding scheme (Ex. J at 152:20–153:9), that claim is undermined by the fact that the Defendant's BLACK WIDOW mark has always been used in conjunction with the spider design. Moreover, the suggestion that a business generating over $1 million in annual revenue could not, despite clear knowledge of Plaintiff's registered word mark, retain a web designer to adjust the website logo strains credibility (Ex. J at 153:15-154:8). Simply put, Blake Black has shown no regard for whether his branding infringes Plaintiff's rights. Defendant continues to use its BLACK WIDOW logo despite being aware that this Court had previously indicated that Defendant's logo was similar Plaintiff's registered BLACK WIDOW logos. (Pl. 56(a)(1) ¶¶ 94-95). In fact, Mr. Black testified that he will not change his branding unless ordered to do so by a judge. (Ex. J at 97:8-98:25). At some point, the writing is on the wall, and a business operating in good faith would change its mark. Blake Black has not.

There is evidence that Blake Black was presented with Plaintiff's logo before the notice letter and did not investigate. (Ex. K). Defendant's conduct that ignores mounting evidence of

confusion and known senior rights is relevant to this factor. Courts in similar circumstances have found that where a defendant did not initially adopt a mark in bad faith, its continued use of the mark after notice and termination constituted willful infringement. *See Gcca, LLC v. MACCG, LLC*, No. 21-cv-5022 (JGK), 2024 BL 64807, at *13 (S.D.N.Y. Feb. 28, 2024) citing *Nikon Inc. v. Ikon Corp.*, 987 F.2d 91, 96 (2d Cir. 1993). Similarly, here, Defendant continued operating under the BLACK WIDOW mark for nearly two years, during which time it received numerous instances of documented confusion. That conduct, much like the conduct in *Gcca, LLC*, constitutes "willful and intentional infringement" of Plaintiff's trademark rights because the Defendant has at all relevant times had knowledge that its activities are in direct contravention of Plaintiff's rights. *Id.* Thus, Defendant's intentional conduct supports a finding that the sixth *Polaroid* factor weighs in Plaintiff's favor.

### G.  Consumer Sophistication – *Polaroid* Factor 8

The eighth *Polaroid* factor evaluates the sophistication of the relevant consumers. *See Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir.1961). Courts consider the level of sophistication typical purchasers in the relevant market, including the "general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of [services]". *Callman on Unfair Competition, Trademarks and Monopolies* § 81.2 at 577; *see also, Miss Universe, Inc. v. Patricelli*, 408 F.2d 506, 509 (2d Cir. 1969); *Avon Shoe Co. v. David Crystal, Inc.*, 279 F.2d 607, 612 (2d Cir. 1960); *Restatement (First) of Torts* §§ 729(d), 731(g).

Importantly, where the marks and services are effectively identical, as is the case here, courts have indicated that even relatively sophisticated consumers may still be confused. *See BPI Lux S.a.r.l. v. Bd. of Managers of Setai Condo.*, No. 18 Civ. 1621 (NRB), 2019 BL 262995, at *9

(S.D.N.Y. July 16, 2019) ("where the [services] are identical and the marks are identical, the sophistication of buyers cannot be relied on to prevent confusion.")

Here, both Plaintiff and Defendant offer pest control services to the general public – specifically homeowners, renters, and small businesses – who are likely to act with urgency and minimal research in response to an immediate pest issue. (Pl. 56(a)(1) ¶ 101). The services offered by both Plaintiff and Defendant are not high-end purchases typically purchased after extensive research and/or evaluation. Rather, they are routine, time-sensitive consumer services often selected based on expedience, availability and prominence in online search results. (Pl. 56(a)(1) ¶ 99-100).

This is exemplified by the testimony of Bridgette Burr, a customer who performed a Google search for "Black Widow Pest Control" and contacted the first number she saw, mistakenly contacting Plaintiff instead of Defendant. (Pl. 56(a)(1) ¶¶ 99, 101). Her experience exemplifies the understandably low degree of care exercised by ordinary consumers when faced with bugs, termites, wild animals invading their home or business, and illustrates that consumer confusion is likely to occur under typical market conditions.

Because the parties' offer essentially identical services to ordinary consumers, and those services are often selected quickly and with minimal diligence, the eighth *Polaroid* factor favors Plaintiff.

## II.    DEFENDANT'S COUNT I – DECLARATORY JUDGMENT OF INELIGIBILITY OF PLAINTIFF'S TRADEMARK

Count one of Defendant's counterclaims seeks a declaratory judgment that Plaintiff's U.S. Application Serial No. 98/124,482 is incapable of registration. (Pl. 56(a)(1) ¶ 103). However, the United States Patent and Trademark Office approved the application and issued U.S. Registration No. 7,466,919 on the Principal Register without requiring any disclaimer. (Pl.

56(a)(1) ¶ 104, 111). These undisputed facts establish that the BLACK WIDOW mark is

presumptively valid and distinctive, as provided under 15 U.S.C. § 1115(a), and that Defendant

lacks both evidentiary and factual support to challenge its eligibility for registration.

Plaintiff filed U.S. Serial No. 98/124,482 for BLACK WIDOW on August 9, 2023. (Pl.

56(a)(1) ¶ 105). The United States Patent and Trademark Office conducted a full examination

which included a search of the USPTO database for any conflicting marks and the USPTO did

not issue any refusals based on mere descriptiveness under Trademark Act Section 2(e), 15

U.S.C. § 1052(e), or likelihood of confusion under Trademark Act Section 2(d), 15 U.S.C. §

1052(d). (Pl. 56(a)(1) ¶ 106). The application received no oppositions during its 30-day

publication period, and ultimately registered on the Principal Register on August 6, 2024 as U.S.

Registration No. 7,466,919. (Pl. 56(a)(1) ¶ 107-109; *see also* TMEP § 1502) ("[a]fter

examination of an application is completed and the examining attorney determines that the mark

is entitled to registration on the Principal Register, the mark is published in the USPTO's

Trademark Official Gazette for opposition.")

The U.S. Trademark Office's decision to register the BLACK WIDOW mark on the

Principal Register without a disclaimer (Pl. 56(a)(1) ¶¶ 109-111) reflects its determination that

the BLACK WIDOW mark is distinctive and functions as a source identifier for Plaintiff's pest

control services (Pl. 56(a)(1) ¶ 110; see also TMEP § 1202).

Despite this, on August 27, 2024, Defendant filed a Petition to Cancel U.S. Registration

No. 7,466,919 with the Trademark Trial and Appeal Board under Cancellation No. 92086092.

(Pl. 56(a)(1) ¶ 113). That proceeding has since been stayed pending the outcome of this

litigation. (Pl. 56(a)(1) ¶ 140). Notably, Defendant's petition was filed without any supporting

evidence or exhibits. (Pl. 56(a)(1) ¶ 113). In fact, throughout discovery Defendant failed to

produce competent evidence of prior use or superior rights by any third party sufficient to challenge Plaintiff's registration.

Specifically, in response to Interrogatory No. 19 which asked Defendant to "describe in detail any trademarks used by third parties upon which Defendant will rely in connection with this proceeding," Defendant identified four entities allegedly using the BLACK WIDOW name: "Black Widow Pest Control, Inc." in Utah, "Black Widow Pest Control Inc." in Indiana, "Black Widow Exterminators, Inc." in Colorado and "Black Widow Pest Management LLC" in Connecticut. (Pl. 56.¶¶ 114, 118). During his April 23, 2025 deposition, Defendant's principal, Blake Black, confirmed that Defendant's response to Interrogatory No. 19 was complete and accurate (Pl. 56.¶ 117), and Defendant did not supplement or amend its response at any time before the close of fact discovery, before the filing of this Rule 56(a)(1) Statement, or after the response was presented to Mr. Black at his deposition. (Pl. 56(a)(1) ¶ 116). Defendant also failed to subpoena any records, take any depositions, or submit any testimony from representatives of the named third parties. (Pl. 56(a)(1) ¶¶ 131-133). Nor has Defendant presented any documentary or testimonial evidence that any of those third parties used the BLACK WIDOW mark prior to Plaintiff's first use, or that any such use has been continuous through the present. (Pl. 56(a)(1) ¶ 133). In fact, Mr. Black testified that one of the identified third-party entities – Black Widow Pest Management LLC in Connecticut – is out of business, and that he has no knowledge as to when the others were formed, whether they have continuously used the BLACK WIDOW mark, whether they are currently operating, or whether any of them used the mark before Plaintiff. (Pl. 56(a)(1) ¶¶ 119-130). Accordingly, Defendant lacks any evidence of third-party priority that could support either its counterclaim or its petition to cancel.

To establish that these alleged third-party common law users have rights relevant to this

dispute, Defendant must establish that such third parties had priority and continuous use of the

mark predating Plaintiff. *See generally Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037,

1043 (2d Cir. 1980) (holding that even if a mark has acquired secondary meaning, it cannot

preclude use by a party whose use began earlier). Defendant has offered no such evidence and

has not identified a single witness capable of competently testifying as to third-party priority or

continuous use.  Importantly, Defendant's initial disclosures and interrogatory responses do not

identify any witnesses who have any actual knowledge of any asserted third-party use of

BLACK WIDOW (Exhibits P and R). Defendant's Initial Disclosures identify the following

witnesses: Blake Black and Merina Sabatucci, both of whom are affiliated with Defendant (Ex. R

at 1-2). Defendant's response to Interrogatory No. 18 identifies the following individuals: Jim

Horton, Merina Sabatucci, Michael Camilini, Robert Scribner, Russell Sieb, and Drew Cowley

(Ex. P at 10), none of which are associated with "Black Widow Pest Control, Inc." in Utah,

"Black Widow Pest Control Inc." in Indiana, or "Black Widow Exterminators, Inc." in Colorado.

(Pl. 56(a)(1) ¶ 135). While Defendant may attempt to rely on screenshots or references to certain

websites, such materials are insufficient to establish the date of first use, whether use has been

continuous, the geographic scope of that use, or whether the use continues to this day.

Moreover, Defendant's fraud-based counterclaim (Dkt. 14, Countercl. ¶ 20) is

unsupported and fails as a matter of law. To prevail on a fraud claim, a party must prove by clear

and convincing evidence that the applicant knowingly made a false, material representation with

the intent to deceive the USPTO. *See In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009)

("[f]raud in procuring a trademark registration or renewal occurs when an applicant knowingly

makes false, material representations of fact in connection with his application."). A party, such

as Defendant, seeking cancellation or judgment against a trademark registration for fraudulent

procurement bears a heavy burden of proof. *See id.* citing *W.D. Byron & Sons, Inc. v. Stein Bros. Mfg. Co.*, 54 C.C.P.A. 1442, 377 F.2d 1001, 1004 (1967). Indeed, "the very nature of the charge of fraud requires that it be proven 'to the hilt' with clear and convincing evidence. There is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party." *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009) citing *Smith Int'l, Inc. v. Olin Corp.*, 209 USPQ 1033, 1044 (T.T.A.B. 1981). Defendant offers no such evidence. Mr. Black expressly testified that he is not aware of any evidence that Plaintiff knew of any third-party using the BLACK WIDOW name prior to filing its trademark application. (Pl. 56(a)(1) ¶ 137). Nor can Defendant prevail on its fraud claim based on its own alleged priority. Plaintiff has operated under the BLACK WIDOW name since at least 2003 (Pl. 56(a)(1) ¶ 142), nearly two decades before Defendant's first use in 2021 (Pl. 56(a)(1) ¶ 149). Accordingly, in the absence of any evidence that Plaintiff knowingly omitted material information or intended to deceive the Trademark Office, Defendant's fraud-based counterclaim fails as a matter of law. Moreover, the individual who signed the declaration, Scott Charney, has not been subpoenaed by Defendant, and discovery is now closed (Pl. 56(a)(1) ¶ 21). Defendant's speculation about what Mr. Charney might say is legally insufficient to support a genuine dispute. *See In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009). The fact that the application was filed and signed with knowledge of Defendant's use is wholly irrelevant as the acquired distinctiveness analysis expressly excludes infringing uses from consideration. *See L.D. Kichler Co. v. Davoil, Inc.*, 192 F.3d 1349 (Fed. Cir. 1999) citing TMEP § 1212.05(b).

In the same regard, any claim that the BLACK WIDOW mark is incapable of registration as being "merely descriptive" is equally unavailing. Mr. Black testified that black widow spiders are "not prevalent in this part of the country," referring to New York and Connecticut, where

24

both Plaintiff and Defendant operate. (Pl. 56(a)(1) ¶ 112). He further confirmed that Defendant

has never treated black widow spiders in the course of providing its services and acknowledged

that such pests uncommon in the Northeast. (Pl. 56(a)(1) ¶¶ 138-139). He also admitted that the

term BLACK WIDOW does not describe any service Defendant has ever provided. (Ex. J at

128:18-23). These facts preclude Defendant from arguing that "Black Widow" is merely

descriptive of the services offered, and support the USPTO's determination that the BLACK

WIDOW mark is inherently distinctive of the services Plaintiff provides thereunder.

 Finally, Defendant's claim that it has "no adequate remedy at law" (Dkt. 14, Countercl. ¶

25) and its request to bar Plaintiff from filing any future trademark applications for "Black

Widow" (Dkt. 14, Countercl. ¶ 24) are wholly unsupported by fact or law. Irreparable harm

exists "where, but for the grant of equitable relief, there is a substantial chance that upon final

resolution of the action the parties cannot be returned to the positions they previously occupied."

*SEC v. Daspin*, 557 F. App'x 46, 48 (2d Cir. 2014) citing *Brenntag Int'l Chem., Inc. v. Bank of

India*, 175 F.3d 245, 249-50 (2d Cir.1999). Defendant makes no such showing. Plaintiff has

continuously operated under the BLACK WIDOW mark since at least 2003, while Defendant

began using the same name since 2021, and continued doing so in 2023 with full knowledge of

Plaintiff's prior use and federal registration rights. The mere possibility that Plaintiff may file

additional BLACK WIDOW applications does not impair Defendant's ability to continue

operating as it has for years during the coexistence of the parties' businesses. In fact, Defendant

has affirmatively chosen to continue using the name despite being aware of instances of

consumer confusion. Having elected to proceed in the face of those risks, Defendant cannot now

claim that additional trademark filings by Plaintiff pose irreparable harm. Its speculative

concerns do not justify the extraordinary relief it seeks, and its request for a broad bar on future

applications for a mark in which Plaintiff holds clear priority is both improper and unsupported under the Lanham Act.

For all these reasons, Plaintiff is entitled to summary judgment on Count One of Defendant's counterclaims.

## III.    DEFENDANT'S COUNT II – COMMON LAW TRADEMARK INFRINGEMENT

Count two of Defendant's counterclaims alleges common law trademark infringement, unfair competition, and deceptive trade practices under Connecticut law. (Dkt. 14, Countercl. ¶¶ 26–36). Plaintiff is the owner of incontestable trademark registrations incorporating the term BLACK WIDOW. Under the Lanham Act, incontestability confers a nationwide exclusive right to use the registered mark everywhere in commerce, defined all commerce which may lawfully be regulated by Congress. *See* 15 U.S.C. § 1115(b). Once a mark becomes incontestable, it is immune to certain challenges, including assertions that the registrant lacks the right to use the mark. *See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189 (1985) ("Incontestable status provides…conclusive evidence of the registrant's exclusive right to use the registered mark"). Despite this, Defendant improperly asks this Court to enjoin Plaintiff from using its own incontestable mark, an outcome that is barred by the statutory protections outlined in 15 U.S.C. § 1115(b)As explained in Plaintiffs Rule 12(c) motion, currently subject to a request for reconsideration, Defendant cannot assert a claim that directly contradicts Plaintiff's statutory right to use its incontestable marks. (Dkts. 27, 108). Although the Court denied the Rule 12(c) motion as moot following the withdrawal of Defendant's admissions (Dkt. 102), that withdrawal has no bearing on the legal sufficiency of Plaintiff's motion or the facts germane to the Rule 12(c) motion.

To summarize, Defendant's common law claim fails as a matter of law for at least four independent reasons: (1) Plaintiff has priority of use and ownership of the BLACK WIDOW mark; (2) several of Plaintiff's BLACK WIDOW marks have been declared incontestable, and Defendant has admitted their incontestability; (3) Defendant lacks any enforceable rights in the mark and admitted as much; and (4) any counterclaim challenging the validity of Plaintiff's logo marks was a compulsory counterclaim that Defendant failed to assert in its Answer, and is therefore waived. *See generally Pirone v. MacMillan, Inc*., 894 F.2d 579 (2d Cir. 1990) (a party asserting common law infringement must show valid, protectable trademark rights, priority of use, and that the opponent's subsequent use is likely to cause confusion).

First, Plaintiff has priority of use and ownership of the BLACK WIDOW mark (Pl. 56(a)(1) ¶ 151). Plaintiff began using its BLACK WIDOW mark in connection with pest control services no later than September 15, 2003. Plaintiff owns multiple federal registrations for the BLACK WIDOW mark, including U.S. Trademark Registration Nos. 4,624,108 and 4,624,109, both of which identify a first use date of September 15, 2003. (Pl. 56(a)(1) ¶¶ 142-144). These facts are not in dispute. At the time Plaintiff adopted and began using the mark, Defendant did not exist, had not used the BLACK WIDOW name in commerce, and Plaintiff was unaware of any third-party use. (Pl. 56(a)(1) ¶ 150). Defendant did not begin using the BLACK WIDOW name until 2021, almost two decades after Plaintiff's first use. (Pl. 56(a)(1) ¶ 149). Accordingly, Plaintiff indisputably has priority, (Pl. 56(a)(1) ¶ 151), and Plaintiff has made continuous use of its marks in commerce. (Pl. 56(a)(1) ¶¶ 142-143).

Second, several of Plaintiff's BLACK WIDOW trademark registrations are incontestable under 15 U.S.C. § 1065, further strengthening Plaintiff's rights. (Pl. 56(a)(1) ¶ 153). Incontestable status of these registrations provides conclusive evidence of: the validity of the

27

registered marks, Plaintiff's ownership of the registered marks, and Plaintiff's exclusive right to use the registered marks in commerce for the identified services. See 15 U.S.C. §§ 1065, 1115(b). Notably, Defendant did not deny the allegations in Plaintiff's complaint relating to the incontestable nature of Plaintiff's U.S. Trademark Registration Nos. 4,624,108 and 4,624,109 for its BLACK WIDOW marks. (Pl. 56(a)(1) ¶ 154). Pursuant to Rule 8(b)(6) of the Federal Rules of Civil Procedure, that failure to deny constitutes an admission that Plaintiff owns U.S. Trademark Registration Nos. 4,624,108 and 4,624,109 and that both marks are incontestable. (Pl. 56(a)(1) ¶ 155).

Third, Defendant lacks enforceable rights in the BLACK WIDOW mark. Defendant does not own, has never owned, and has never even applied for, a state or federal trademark registration for BLACK WIDOW. (Pl. 56(a)(1) ¶ 146). In fact, when asked to confirm that Defendant does not own a trademark for "BLACK WIDOW", Defendant's principal, Blake Black, stated "that's correct". (Pl. 56(a)(1) ¶ 152). To the extent Defendant claims any common law rights, those rights are junior and legally insufficient to overcome Plaintiff's long-standing and continuous use of the mark, including in New York, New Jersey and Connecticut. (Pl. 56(a)(1) ¶ 147).

Fourth, any counterclaim for invalidity of Plaintiff's logos was a compulsory counterclaim under Federal Rule of Civil Procedure 13(a) and was required to be asserted at the time Defendant filed its Answer. Defendant failed to do so. Moreover, Defendant affirmatively admitted that Plaintiff's logo marks are incontestable. As the Supreme Court explained, "[a] counterclaim which is compulsory but is not brought is thereafter barred." *See Baker v. Gold Seal Liquors, Inc*., 417 U.S. 467, 469 n.1 (1974); *accord Mali v. Fed. Ins. Co., 720 F.3d 387, 395* (2d Cir. 2013).

Defendant also offers no competent evidence of damages or lost business resulting from Plaintiff's use of its BLACK WIDOW mark. Despite the Court's Scheduling Order, Defendant failed to serve a damages report, and the deadline to do so has now passed. (Pl. 56(a)(1) ¶ 156). As such, any damages Defendant claims to have sustained as a result of the alleged common law infringement are purely speculative.

In sum, Plaintiff has priority, incontestable trademark rights, and a long history of continuous use that predates Defendant by nearly 20 years. Defendant lacks any trademark rights, cannot prove priority, and offers no damages or legal justification for its counterclaim. As such, summary judgment should be granted in Plaintiff's favor on Count Two of Defendant's counterclaims.

## IV. DEFENDANT'S AFFIRMATIVE DEFENSES ARE UNSUPPORTED AND FAIL AS A MATTER OF LAW

Defendant asserts several affirmative defenses that fail as a matter of law or are unsupported by the record.

### A. <u>Second Affirmative Defense – Supplemental Register Misstatement</u>

In its second affirmative defense, Defendant alleges that Plaintiff "knowingly and falsely presented" U.S. Trademark Registration No. 4,582,084 as a Principal Register trademark. (Dkt. 14 at 9). However, this claim is entirely unsupported by the record. In the parties' letter correspondence, Plaintiff made no representation that the '084 Registration was on the Principal Register. (Ex. C; Pl. 56(a)(1) ¶ 157). Plaintiff merely stated: "Moreover, Black Widow is the owner of U.S. Trademark Registration No. 4,582,084 for the BLACKWIDOWPEST mark; U.S. Trademark Registration No. 4,624,108 for the BLACK WIDOW mark; and U.S. Trademark Registration No. 4,624,109 for the BLACK WIDOW TERMITE & PEST CONTROL CORP. - "SHE ALWAYS GETS HER PREY!" mark, all for "termite and pest control" in International

29

Class 037. The latter two marks have been deemed "incontestable" by the United States Patent and Trademark Office ("USPTO")." (Ex. C). Plaintiff's letter also included a copy of the '084 Registration, which clearly identifies the mark as being registered on the Supplemental Register. (Ex. C at 3). Moreover, Defendant was plainly aware of the mark's registration status, as its own response letter identified the '084 mark as being registered on the Supplemental Register. (Ex. C; Pl. 56(a)(1) ¶ 157). Thus, Defendant's assertion of intentional misrepresentation as set forth in its second affirmative defense is entirely baseless.

### B.  Ninth Affirmative Defense – Lack of Use in Connecticut

In its ninth affirmative defense, Defendant contends that Plaintiff's claims are barred due to an alleged lack of commerce in the state of Connecticut. (Dkt. 14 at 10-11). This claim is factually incorrect and legally insufficient. Plaintiff is licensed by the State of Connecticut to provide wildlife management services. (Pl. 56(a)(1) ¶ 158). Additionally, Plaintiff has actively promoted and/or offered its BLACK WIDOW pest control services to customers who reside in Connecticut but own or manage properties in New York City. (*See* Pl. 56(a)(1) ¶ 147; *see also* Ex. V). For argument's sake, even if Plaintiff had zero use in Connecticut, Defendant's ninth affirmative defense would still fail. Federal trademark rights are based on interstate use. Thus, Plaintiff need only show use between two states, such as New York and New Jersey, to maintain its federal registrations – which Plaintiff has done. (See Exhibits T and T1).

Overall, the undisputed facts establish Plaintiff's use of the BLACK WIDOW mark in interstate commerce, including within Connecticut. Accordingly, Defendant's assertion of nonuse in Connecticut fails as a matter of law.

### C.  Tenth Affirmative Defense – Customer Confusion Mischaracterization

In its tenth affirmative defense, Defendant claims that Plaintiff's allegations of consumer

confusion are false or such confusion somehow supports Defendant's superior rights in the

BLACK WIDOW name. (Dkt. 14 at 11). The record squarely contradicts these assertions.

Defendant's principal, Blake Black, admitted under oath that Defendant has received calls from

customers attempting to reach Plaintiff. (Pl. 56(a)(1) ¶¶ 159-160). Defendant also received a text

message from an industry professional mistakenly identifying a glue trap bearing Plaintiff's logo

as Defendant's work. (Pl. 56(a)(1) ¶¶ 161-163). These admissions directly undermine

Defendant's tenth affirmative defense, which states that it "has never received a single call from

a customer who, to Defendant's knowledge, was looking for Plaintiff." (Dkt. 14 at 11).

Moreover, since Defendant filed its Answer, Plaintiff has submitted documentary evidence of at

least sixteen (16) separate instances of actual consumer confusion (Pl. 56(a)(1) ¶¶ 55-70),

negating Defendant's statement that "Plaintiff's claims of receiving such calls may be false."

(Dkt. 14 at 11). This evidence confirms that Plaintiff's allegations of confusion are well-

supported and renders Defendant's tenth affirmative defense meritless.

### D. <u>Twelfth Affirmative Defense – Surname and Descriptiveness Argument</u>

Finally, in its twelfth affirmative defense, Defendant asserts that Plaintiff is attempting to

control the use of its principal's surname (i.e., "Black"), or a merely descriptive term. (Dkt. 14 at

12-13). This defense also fails as a matter of law. Defendant does not use "Black" as a surname

within the mark BLACK WIDOW, nor is the mark used in a descriptive sense. (Pl. 56(a)(1) ¶

164). The surname of Defendant's principal is not "Black Widow" or "Blackwidow," and the

term "Black Widow" does not describe any services offered by Defendant. (*Id.*; *see also* Pl.

56(a)(1) ¶¶ 138-139).

In addition, Defendant affirmatively alleges that it operates under the name "Black

Widow Pest Specialist" and claims to hold "common law trademark rights" in the mark BLACK

WIDOW. (Dkt. 14 at 16 ¶ 11; 19 ¶ 31). These admissions confirm that Defendant uses BLACK WIDOW as a trademark to identify the source of its services. However, a fair use defense under 15 U.S.C. § 1115(b)(4) requires that the allegedly infringing term be used "otherwise than as a mark." *See Tiffany & Co. v. Costco Wholesale Corp*., 971 F.3d 74, 92 (2d Cir. 2020) (*quoting JA Apparel Corp. v. Abboud*, 568 F.3d 390, 400 (2d Cir. 2009)). Because Defendant expressly asserts trademark rights in BLACK WIDOW, it cannot claim that its use is merely descriptive or surname-based.

Moreover, Plaintiff's '919 Registration for the BLACK WIDOW word mark is registered on the Principal Register, and at least two other registrations (i.e., '108 and '109 Registrations) have achieved incontestable status. This conclusively establishes the validity of the marks and Plaintiff's exclusive right to use them, defeating any argument that the marks are merely descriptive. *See* 15 U.S.C. §§ 1057(b); 1115(a)-(b).

As the Supreme Court held in *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189 (1985), incontestable registrations preclude challenges based on mere descriptiveness ("The language of the Lanham Act…refutes any conclusion that an incontestable mark may be challenged as merely descriptive…With respect to incontestable marks[, Lanham Act] § 33(b), provides that registration is conclusive evidence of the registrant's exclusive right to use the mark, subject to the conditions of § 15 and the seven defenses enumerated in § 33(b) itself. Mere descriptiveness is not recognized by either § 15 or § 33(b) as a basis for challenging an incontestable mark.") *See* 15 U.S.C. §§ 1115(a)-(b), 1065.

Accordingly, Defendant's twelfth affirmative defense must be rejected.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its Motion for Summary Judgment in full, enter judgment in favor of Plaintiff on all claims, and dismiss Defendant's counterclaims and aforementioned affirmative defenses in their entirety.

Plaintiff has established that it owns valid and enforceable trademark rights in the BLACK WIDOW mark, that Defendant's use of the mark is likely to cause confusion, and that Defendant's defenses lack merit both factually and as a matter of law.

Accordingly, Plaintiff is entitled to all relief sought, including injunctive relief, damages, and any other remedies the Court deems just and proper.

Dated: June 18, 2025

**FARBER, LLC**

By  __/s/*Jonathan A. Winter*_____
Jonathan A. Winter
4 Corporate Dr, Ste 287
Shelton, CT 06484
Tel: (203) 286-8356
Email: j.winter@farberllc.com
***Counsel for Black Widow Termite & Pest Control Corp.***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing is being served via ECF.


06/18/2025                                    /s/Jonathan A. Winter_____

Date                                          Jonathan A. Winter