## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **Black Widow Termite & Pest Control Corp.,** | |
| Plaintiff, | Civil Action No.:3:23-cv-01246 |
| vs. | |
| **Black Widow Pest Specialist LLC,** | |
| Defendant. | |

### PLAINTIFF'S LOCAL RULE 56(a)1 STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 56(a)1 of the Local Rules of Civil Procedure for the United States District Court for the District of Connecticut, Plaintiff submits the following Statement of Undisputed Facts in support of Plaintiff's Motion for Summary Judgment on Liability.

## I.     TRADEMARK INFRINGEMENT CLAIM – UNDISPUTED MATERIAL FACTS

### A.  Strength of Plaintiff's Mark

1.  Plaintiff owns U.S. Trademark Registration No. 4,582,084 for the mark BLACKWIDOWPEST for "termite and pest control" services in International Class 037 ("the '084 Registration"). (Dkt. 1 ¶ 25; Dkt. 1-3; Dkt. 16 at 4; Exhibit E at 2-3).

2.  Plaintiff owns U.S. Trademark Registration No. 4,624,108 for the mark BLACK WIDOW & Design for "termite and pest control" services in International Class 037 ("the '108 Registration") and color is not a claimed feature of the mark such that it protects all color variations of the registered mark. (Dkt. 1 ¶ 26; Dkt. 1-4; Ex. E at 4-5).

3.  The '108 Registration has achieved incontestable status with the United States Patent and Trademark Office under 15 USC §1065. Defendant admits the incontestability of the '108 Registration. (Dkt. 1 ¶ 26; Dkt. 1-4; Dkt. 14 at 4 ¶ 26).

4.  Plaintiff owns U.S. Trademark Registration No. 4,624,109 for the mark BLACK WIDOW TERMITE & PEST CONTROL CORP. - "SHE ALWAYS GETS HER PREY!" & Design for "termite and pest control" services in International Class 037 ("the '109 Registration") and color is not a claimed feature of the mark such that it protects all color variations of the registered mark. (Dkt. 1 ¶ 27; Dkt. 1-5; Ex. E at 6-7).

5.  The '109 Registration has achieved incontestable status with the United States Patent and Trademark Office 15 USC §1065. Defendant admits the incontestability of the '109 Registration. (Dkt. 1 ¶ 27; Dkt. 1-5; Dkt. 14 at 4 ¶ 27).

6.  Plaintiff's BLACK WIDOW word mark Application Serial No. 98/124,482 for "pest control for commercial buildings; pest control for residential homes; termite and pest control services, other than for agriculture, aquaculture, horticulture and forestry" in Class 037 registered on the Principal Register on August 6, 2024 under U.S. Registration No. 7,466,919 ("the '919 Registration"). (Dkt. 48-1 at 1; Dkt. 48-8, Dkt. 16 at 4; Ex. E at 8-9).  Plaintiff's '919 Registration is prima facie evidence of the validity of the registered mark and of the registration of the mark, of Plaintiff's ownership of the mark, and of the Plaintiff's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate and there are no conditions or limitations stated in the certificate of the '919 Registration. (*Id.* 15 USC §1057).

7.  The '919 Registration issued without a disclaimer and copies of the '084, '108, '109 and '919 registrations are at Exhibit E.

8.  In response to Paragraphs 26 and 27 of the Complaint, Defendant did not deny or otherwise dispute the allegation that Plaintiff's '108 and '109 Registrations have achieved incontestable status. (Dkt. 14 at 4 ¶¶ 26-27).

9.  Defendant's Answer states: "Admit that plaintiff appears to own the specified trademark registration, specifically for a stylized mark for a logo, and that a Sections 8 and 15 combined declaration appears to have been accepted and acknowledged by the United States Patent and Trademark Office, which document speaks for itself." (Dkt. 14 at 4 ¶¶ 26-27). Which therefore acknowledges that the Plaintiff's '108 and '109 Registrations are incontestable under 15 USC §1065.

10. In addition to Plaintiff's BLACK WIDOW word mark, Plaintiff also uses variations of the BLACK WIDOW mark, including certain stylized versions shown on page 1 of Exhibit E. (See Exhibit A, Declaration of P. Geiger ¶ 6; see also Dkts. 1-3, 1-4 and 1-5).

11. Plaintiff has continuously used its registered BLACK WIDOW marks in interstate commerce, including in New York and New Jersey. Additionally, several of Plaintiff's New York-based customers reside in Connecticut but own or manage buildings in New York City. (See Ex. A, Decl. of P. Geiger ¶ 9; Dkt. 1 ¶ 31; see also Exhibits T and T1).

12. Plaintiff owns the website www.blackwidowpestcontrol.com, which is accessible to potential customers nationwide – a fact Defendant conceded in the 26(f) report. (See Ex. A, Decl. of P. Geiger ¶ 10; see also Dkt. 16 at 4).

13. Plaintiff has provided pest control services to the Port Authority of New York and New Jersey. (See Ex. A, Decl. of P. Geiger ¶ 11; Ex. T).

14. Plaintiff has serviced Port Authority-controlled assets and locations, including ferries operating in navigable waterways between New York and New Jersey.  (See Ex. A, Decl. of P. Geiger ¶ 11).

15. The United States Patent and Trademark Office maintains a publicly accessible trademark register, searchable at https://tmsearch.uspto.gov/. A search of Class 037 marks containing the words "BLACK" and "WIDOW" in the word mark and referencing "pest" in the services description reveals that the only such registered marks are owned by Plaintiff. (See Exhibit B).

16. Termite, pest and wildlife control services are classified in International Class 037 under the Nice Classification System, as recognized by the United States Patent and Trademark Office. (See 37 C.F.R. § 2.85(b); TMEP § 1401.02(a), available at https://tmep.uspto.gov/RDMS/TMEP/current#/current/TMEP-1400d1e8.html).

17. Exhibit B is a true and correct copy of a United States Patent and Trademark Office trademark register search reflecting results as of May 6, 2025. The search included: (1) the term "BLACK WIDOW" in the word mark field with "pest" in the goods/services description and Class 037 selected; and (2) the term "BLACKWIDOW" with "pest" in the goods/services field.

18. None of the third-party marks identified in Exhibit B include both the words "BLACK" and "WIDOW" in the word mark field – i.e. the trademark that is being registered. (See Exhibit B).

19. Defendant does not own any trademark registration(s) for the terms "BLACK WIDOW" or "BLACKWIDOW". (See Exhibit B).

20. No third party owns any trademark registration for the terms "BLACK WIDOW" or "BLACKWIDOW" in connection with termite, pest or wildlife control services. (See Exhibit B).

21. Defendant has not taken any depositions or elicited testimony from Paul Geiger, Scott Charney, or any other witness with knowledge or potential knowledge of the prosecution of the marks at issue in this case.

22. Defendant has not identified any evidence that Plaintiff made statements to the United States Patent and Trademark Office that were knowingly false, made with the intent to deceive, or that were material to the USPTO's decision to issue the registrations.

23. Plaintiff filed its word mark application for BLACK WIDOW on August 9, 2023. (Dkt. 48-8; Ex. E at 8).

24. On August 10, 2023, Plaintiff sent a cease-and-desist letter to Defendant asserting infringement of the BLACK WIDOW mark. (Exhibit C, previously marked as PX-13 at Blake Black Dep. Sept. 24, 2024).

25. Defendant has produced no evidence that, as of August 9, 2023, Plaintiff believed or had any reason to believe that Defendant possessed superior rights in the BLACK WIDOW mark.

26. Exhibit C demonstrates that Plaintiff considered Defendant's use of the BLACK WIDOW mark to be unauthorized and infringing.

27. Blake Black testified that "the strength of Plaintiff's mark" factor is neutral. (Exhibit J, Blake Black Dep. April 23, 2025 at 130:6-131:17). However, for at least the reasons set forth above in paragraphs 1 through 26, *Polaroid* factor (1) – the strength of Plaintiff's mark – weighs in favor of Plaintiff. *See Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir.1961).

**B. Similarity of the Marks**

28. Defendant company, Black Widow Pest Specialists, LLC, was founded in June 2021 and operates under the BLACK WIDOW name for the provision of pest control services. (Dkt. 1 at 6-7 ¶¶ 32-34; Dkt. 14 at 4 ¶¶ 32-34).

29. Defendant's use of the BLACK WIDOW word mark is identical to Plaintiff's use of the BLACK WIDOW mark (i.e. both parties use BLACK WIDOW). (Dkt. 33-1 at 6).

30. Defendant's BLACK WIDOW logo (Exhibit D, previously marked as PX-16 at Blake Black Dep. Sept. 24, 2024) and Plaintiff's BLACK WIDOW logo (Ex. E at 1; see also Dkt. 33-8 at 8) are confusingly similar. (PJR Hr'g Tr. 4:16-4:20).

31. Plaintiff's BLACK WIDOW logo and Defendant's BLACK WIDOW logo share at least five similarities. (Exhibit F, Blake Black Dep. Sept. 24, 2024 at 204:14-204:17; see also Exhibit G, previously marked as PX-25 at Blake Black Dep. Sept. 24, 2024).

32. Plaintiff's BLACK WIDOW logo and Defendant's BLACK WIDOW logo both contain the words "BLACK WIDOW". (Ex. F, Blake Black Dep. Sept. 24, 2024 at 197:12-197:17).

33. Plaintiff's BLACK WIDOW logo and Defendant's BLACK WIDOW logo both contain a spider design. (Ex. F, Blake Black Dep. Sept. 24, 2024 at 198:10-198:13).

34. Plaintiff's BLACK WIDOW logo and Defendant's BLACK WIDOW logo both contain the color red. (Ex. F, Blake Black Dep. Sept. 24, 2024 at 198:15-198:18).

35. Plaintiff's BLACK WIDOW logo and Defendant's BLACK WIDOW logo both contain the color black. (Ex. F, Blake Black Dep. Sept. 24, 2024 at 198:19-198:21).

36. Plaintiff's BLACK WIDOW logo and Defendant's BLACK WIDOW logo both contain the word "PEST". (Ex. F, Blake Black Dep. Sept. 24, 2024 at 204:6-204:13). Therefore the first

three words of Defendants mark are BLACK WIDOW PEST in that order and Plaintiff owns
Reg. No. 4,582,08 for BLACKWIDOWPEST (Ex. E – the '084 Registration).

37. Bridgette Burr saw Defendant's BLACK WIDOW logo when Defendant was at her mother's
house in the summer of 2023 to take care of bats. (Exhibit H, Burr Dep. at 10:20-11:14).

38. Bridgette Burr was present on both occasions when Defendant was at her mother's house and
saw Defendant's BLACK WIDOW logo each time and Defendant's representatives were at
Ms. Burr's house for several hours on at least the second visit. (Ex. H, Burr Dep. at 10:20-
12:14).

39. As of the date of her deposition, after being shown Plaintiff's BLACK WIDOW logo,
Bridgette Burr testified that was the logo she saw at the time of service at her mother's house
in 2023; however, the logo she saw was actually Defendant's. (Ex. H, Burr Dep. at 12:20-
23).

40. As of the date of her deposition, after being shown Plaintiff's BLACK WIDOW logo,
Bridgette Burr was still unable to distinguish it from Defendant's logo. (Ex. H, Burr Dep. at
15:21-16:24) and Defendant has not elicited testimony from any other customer or potential
customer in this matter.

41. For at least the reasons set forth above in paragraphs 28 through 40, *Polaroid* factor (2) –
"the degree of similarity between the two marks" – weighs in favor of Plaintiff. *See Polaroid
Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir.1961).

**C. Proximity of the Services**

42. Defendant has stipulated in the 26(f) report that the pest control services "offered by both
Plaintiff and Defendant under the term BLACK WIDOW appear to be in many cases
identical but at least substantially similar." (Dkt. 16 at 5).

43. Plaintiff's registered BLACK WIDOW marks cover "termite and pest control" services in Class 37. (See Dkts. 1-3, 1-4 and 1-5; see also Ex. E at 2-9).

44. Defendant uses BLACK WIDOW for "termite and pest control services other than agriculture, aquaculture, horticulture, and forestry". (Ex. F, Blake Black Dep. Sept. 24, 2024 at 280:19-23).

45. Plaintiff's registered BLACK WIDOW word mark covers, in part, "termite and pest control services, other than for agriculture, aquaculture, horticulture and forestry". (Dkt. 48-8; Ex. E at 8-9).

46. Defendant uses BLACK WIDOW to promote its pest control business in commercial buildings. (Ex. F, Blake Black Dep. Sept. 24, 2024 at 280:8-11).

47. Plaintiff's registered BLACK WIDOW word mark covers, in part, "pest control for commercial buildings". (Dkt. 48-8; Ex. E at 8-9).

48. Defendant uses BLACK WIDOW to promote its pest control business for residential homes. (Ex. F, Blake Black Dep. Sept. 24, 2024 at 280:15-18).

49. Plaintiff's registered BLACK WIDOW word mark covers, in part, "pest control for residential homes". (Dkt. 48-8; Ex. E at 8-9).

50. Accordingly, for at least the reasons set forth in paragraphs 42-49 above, *Polaroid* factor (3) – "the proximity of the [services]" – weighs in favor of Plaintiff. *See Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir.1961).

**D.   "Bridging the Gap"**

51. Plaintiff is licensed by the State of Connecticut to provide wildlife management services. (Ex. A, P. Geiger Decl. ¶ 12).

52. There is a large population of individuals from Fairfield County Connecticut that commute to New York City and thus there is significant overlap between individuals consuming services in Connecticut who also are regularly in New York City. (See Exhibit V).

**E. Evidence of Actual Confusion**

53. Once Plaintiff began receiving misdirected calls, it implemented a procedure whereby the employee who received the call would take contemporaneous notes of the call and/or create an email summary. The resulting notes and emails are compiled in Exhibit I. (See Ex. A., Decl. of P. Geiger at ¶ 13).

54. As of the filing of the Complaint on September 22, 2023, Plaintiff had documented nearly 20 instances of phone calls from Defendant's customers or potential customers or referral sources attempting to reach Defendant but who instead contacted Plaintiff (Dkt. 1 at 7 ¶ 37; Exhibit I at P000003-P000044; see also Ex. A, Decl. of P. Geiger ¶ 14 ) and the foregoing represents evidence of actual confusion.

55. Between November 2023 and May 2025, multiple customers and referral sources of Defendant contacted Plaintiff while mistakenly believing they were contacting Defendant or otherwise exhibited confusion between Plaintiff and Defendant. (Ex. I at P000001-P000002, P000045, P000048, P000057, P000058-62, P000065-68, P000888-893, P001227-1235).

56. On November 16, 2023, Bridgette Burr, the daughter of a customer of Defendant who was present when Defendant provided bat remediation services at here mother's house, contacted Plaintiff seeking pest control services while mistakenly believing she was contacting Defendant (Ex. J, Blake Black Dep. April 23, 2025 at 25:21-22; Ex. I at P000001; Ex. A, Decl. of P. Geiger ¶ 15(a)).

57. On December 7, 2023, David Cass, a customer of Defendant (or representative of a customer of Defendant), contacted Plaintiff while mistakenly believing he was contacting Defendant (Ex. F, Blake Black Dep. Sept. 24, 2024 at 131:11-13; Ex. I at P000002, P000045; Ex. A, Decl. of P. Geiger ¶ 15(b)).

58. On February 12, 2024, Charlene Jenkins, a customer of Defendant, contacted Plaintiff while mistakenly believing she was contacting Defendant (Ex. F, Blake Black Dep. Sept. 24, 2024 at 148:1-15; Ex. I at P000048; Ex. A, Decl. of P. Geiger ¶ 15(c)).

59. On or around October 11, 2024, a pest control industry professional confused Plaintiff's branding with that of Defendant (Ex. I at P000057; Ex. A, Decl. of P. Geiger ¶ 15(d)).

60. On October 21, 2024, two customers or potential customers contacted Plaintiff while mistakenly believing they were contacting Defendant. (Ex. I at P000065-66; Ex. A, Decl. of P. Geiger ¶ 15(e)-(f)).

61. On November 7, 2024, a customer or potential customer contacted Plaintiff while mistakenly believing they were contacting Defendant, indicating confusion between Plaintiff's branding and that of Defendant, (Ex. I at P000888, P000891-893; Ex. A, Decl. of P. Geiger ¶ 15(g)).

62. On November 8, 2024, a customer or potential customer contacted Plaintiff while mistakenly believing they were contacting Defendant. (Ex. I at P000889-890; Ex. A, Decl. of P. Geiger ¶ 15(h)).

63. On February 12, 2025, a referral source of Defendant contacted Plaintiff while mistakenly believing they were contacting Defendant (Ex. I at P001227-P001228; Ex. A, Decl. of P. Geiger ¶ 15(i)).

64. On March 26, 2025, Herica Campos, a customer of Defendant, contacted Plaintiff while mistakenly believing she was contacting Defendant and asked for clarification regarding the

distinction between the two companies (Ex. J, Blake Black Dep. April 23, 2025 at 112:1-10; Ex. I at P001229-1230; Ex. A, Decl. of P. Geiger ¶ 15(j)).

65. On April 10, 2025, Nicole Brown from FAD Mechanical, a customer of Defendant, contacted Plaintiff regarding a quarterly service contract with Defendant, while mistakenly believing she was contacting Defendant. (Ex. J, Blake Black Dep. April 23, 2025 at 112:1-10; Ex. I at P001232; Ex. A, Decl. of P. Geiger ¶ 15(k)).

66. On April 11, 2025, Charles Engle, a customer of Defendant, contacted Plaintiff regarding a recent carpenter ant treatment provided by Defendant, while mistakenly believing he was contacting Defendant. (Ex. J, Blake Black Dep. April 23, 2025 at 112:1-10; Ex. I at P001232; Ex. A, Decl. of P. Geiger ¶ 15(l)).

67. On April 14, 2025, Michele Rau, a customer of Defendant, contacted Plaintiff to re-schedule a pest control service appointment she had with Defendant, while mistakenly believing she was contacting Defendant. (Ex. J, Blake Black Dep. April 23, 2025 at 112:1-10; Ex. I at P001234; Ex. A, Decl. of P. Geiger ¶ 15(m)).

68. On April 15, 2025, Laura Ledan, a customer of Defendant, contacted Plaintiff to schedule a follow-up service under the Gold Plan she has with Defendant. (Ex. J, Blake Black Dep. April 23, 2025 at 52:3-19; Ex. I at P001234; Ex. A, Decl. of P. Geiger ¶ 15(n)).

69. On April 22, 2025, David Cook from Letizia's Pizza, a customer of Defendant, contacted Plaintiff while mistakenly believing he was contacting Defendant. (Ex. J, Blake Black Dep. April 23, 2025 at 51:6-52:2; Ex. I at P001234; Ex. A, Decl. of P. Geiger ¶ 15(o)).

70. On May 27, 2025, a customer or potential customer contacted Plaintiff while mistakenly believing they were contacting Defendant. (Ex. I at P001235; Ex. A, Decl. of P. Geiger ¶ 15(p)).

71. During her deposition, Bridgette Burr testified that she was confused between Plaintiff and Defendant, and mistakenly contacted Plaintiff seeking services from Defendant (Ex. H, Burr Dep. at 16:17-24, 18:14-18).

72. Bridgett Burr testified that she previously saw Defendant's branded trucks and t-shirts on two separate occasions, including during an all-day service call. (Ex. H, Burr Dep. at 11:1-12:9).

73. Despite having seen Defendant's branded trucks and t-shirts on two separate occasions, Ms. Burr was unable initially to correctly identify Defendant's logo during her deposition and rather could not identify which company logo was at her house until she was informed which one was Plaintiff and which one was Defendant. (Ex. H, Burr Dep. at 12:3-14, 12:20-23, 17:14-18:6).

74. Defendant has received communications from customers who confused Defendant with Plaintiff. (Exhibit K at 1-2, previously marked as PX-23 at Blake Black Dep. Sept. 24, 2024).

75. Defendant has also received communications from pest control industry professionals who confused Defendant with Plaintiff. (Ex. K at ARM-BLACK-000123, previously marked as PX-24 at Blake Black Dep. Sept. 24, 2024).

76. For at least the reasons set forth above in paragraphs 53 through 75, *Polaroid* factor (5) – "evidence of actual confusion" – weighs in favor of Plaintiff. *See Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir.1961).

**F. Defendant's Bad Faith**

77. Blake Black testified that he adopted the BLACK WIDOW mark "in or around September 7, 2021." (Ex. F, Blake Black Dep. Sept. 24, 2024 at 282:15-18).

78. Plaintiff's 2003 and 2009 first use dates for the BLACK WIDOW marks in the '084, '108 and '109 Registrations predate Defendant's adoption of the BLACK WIDOW mark. (Dkts. 1-3, 1-4 and 1-5; Ex. E at 2-7; Ex. F, Blake Black Dep. Sept. 24, 2024 at 282:15-18).

79. Plaintiff's 2014 registration dates for the BLACK WIDOW marks in the '084, '108 and '109 Registrations predate Defendant's adoption of the BLACK WIDOW mark. (Dkts. 1-3, 1-4 and 1-5; Ex. E at 2-7; Ex. F, Blake Black Dep. Sept. 24, 2024 at 282:15-18).

80. Between November 2023 and April 2025, Plaintiff produced at least fourteen documents to Defendant that referenced or contained evidence of potential or actual consumer confusion or at minimum mis-directed calls from individuals seeking pest or wildlife control services from Defendant but who contacted Plaintiff instead (Ex. I at  P000001-P000002, P000045, P000048, P000057, P000065-66, P000888, P000891-893, P000889-890, P001227–P001234).

81. Despite receiving the documents evidencing potential or actual consumer confusion or misdirected calls in Exhibit I, Defendant did not take steps to change its name, logo or branding visible to consumers to remove use of BLACK WIDOW or Defendant's logo which contains BLACK WIDOW and a spider design. (Ex. J, Blake Black Dep. April 23, 2025 at 14:18-15:3, 29:1-23, 33:24-34:15, 34:20-35-8, 39:16-20, 41:12-45:16, 47:3-50:20, 63:11-21, 65:10-66:3).

82. As of the date of this filing, Defendant's branding remains unchanged in that all of Defendant's shirts, marketing materials, trucks and website use BLACK WIDOW and/or Defendant's logo containing BLACK WIDOW and a spider design.  (See Exhibit L at 2-6, previously marked as PX-62 at Blake Black Dep. April 23, 2025).

83. On December 1, 2023, Plaintiff produced to Defendant a document bates stamped P000001, which references actual consumer confusion (Exhibit M at 1); following that production, Defendant did not change its name or logo. (Ex. J, Blake Black Dep. April 23, 2025 at 14:18-15:3).

84. On December 7, 2023, Plaintiff produced to Defendant a document bates stamped P000045, which references actual consumer confusion (Ex. M at 4); following that production, Defendant did not change its name or logo. (Ex. J, Blake Black Dep. April 23, 2025 at 34:20-35:4).

85. On February 14, 2024, Plaintiff produced to Defendant a document bates stamped P000048, which references actual consumer confusion (Ex. M at 6); following that production, Defendant did not change its name or logo. (Ex. L).

86. On February 13, 2025, Plaintiff produced to Defendant a document bates stamped P001227-P001228, which references actual confusion (Ex. M at 14); following that production, Defendant did not change its name or logo. (Ex. J, Blake Black Dep. April 23, 2025 at 39:16-20).

87. On March 26, 2025, Plaintiff produced to Defendant a document bates stamped P001229-1230, which references actual consumer confusion (Ex. M at 15); following that production, Defendant did not change its name or logo. (Ex. J, Blake Black Dep. April 23, 2025 at 45:13-16).

88. On April 14, 2025, Plaintiff produced to Defendant a document bates stamped P001231-1232, referencing two instances of actual consumer confusion (Ex. M at 21); following that production, Defendant did not change its name or logo. (Ex. J, Blake Black Dep. April 23, 2025 at 50:13-20).

89. On April 23, 2025, Plaintiff produced to Defendant a document bates stamped P001233-1234, referencing three instances of actual consumer confusion (Ex. M at 28); following that production, Defendant did not change its name or logo. (Ex. J, Blake Black Dep. April 23, 2025 at 50:13-54:18).

90. On May 27, 2025, Plaintiff produced to Defendant a document bates stamped P001235, referencing actual consumer confusion (Ex. M at 35); following that production Defendant did not change its name or logo. (Ex. L).

91. As detailed in paragraphs 77 through 90, Defendant was notified of and served evidence of misdirected consumer calls. (See Ex. M).

92. Defendant was aware of Plaintiff's trademark registrations (see Ex. C).

93. Despite Defendant's awareness of Plaintiff's trademark registrations and despite being notified and served evidence of misdirected consumer calls, Defendant continued servicing customers under the BLACK WIDOW brand. (Ex. J, Blake Black Dep. April 23, 2025 at 14:18-15:3, 29:1-23, 33:24-34:15, 34:20-35-8, 39:16-20, 41:12-45:16, 47:3-50:20, 63:11-21, 65:10-66:3).

94. During his second deposition, Blake Black confirmed he was aware that the Court had indicated Plaintiff's logo registrations, namely the '108 and '109 registrations (Dkts. 1-3, 1-4 and 1-5; Ex. E at 4-7), are similar to Defendant's logo (Ex. D; Ex. J, Blake Black Dep. April 23, 2025 at 93:2-14, 95:3-97:1).

95. Despite having knowledge of the Court's statements, Defendant had not removed BLACK WIDOW from its branding or logo as of the date of Blake Black's deposition. (Ex. J, Blake Black Dep. April 23, 2025 at 96:15-22).

96. After the registration date of Plaintiff's Principal Register BLACK WIDOW word mark (Dkt. 48-8; Ex. E at 8-9), and with knowledge of that registration, Defendant removed the spider design from its website logo at the top left and began using the words BLACK WIDOW alone, while continuing to use the logo mark elsewhere. (Ex. J, Blake Black Dep. April 23, 2025 at 74:12-19; see also Ex. L, previously marked as PX-20 and PX-62 at Blake Black's depositions).

97. When Defendant changed its website branding from the version shown in PX-20 to PX-62 (Ex. L), Defendant's use of BLACK WIDOW were identical to the rights and scope thereof protected by Plaintiff's Principal Register word mark (Dkt. 48-8; Ex. E at 8-9), which protects the words BLACK WIDOW regardless of stylization or design.

98.  At the time of this website change referenced in Paragraphs 96 and 97 above, Defendant was aware of Plaintiff's registration, which had been submitted as an exhibit to Plaintiff's Pre-Judgment Remedy motion and served on Defendant's counsel on August 6, 2024. (Dkt. 48-8; Ex. E at 8-9).

**G. Consumer Sophistication**

99. At least one customer who contacted Plaintiff by mistake testified that they found the pest control provider through a Google search. (Ex. H at 12:24-14:5).

100.  During her deposition, Ms. Burr testified that she mistakenly contacted Plaintiff after performing a Google search for "Black Widow Pest Control" and calling the first number that appeared. (Ex. H Burr Dep. at 12:24-14:5).

101.  Both Plaintiff and Defendant market their pest control services to the general public, including through their respective websites and other online platforms. (Ex. L; Ex. N).

102.    For at least the reasons set forth in Paragraphs 99-101 above, *Polaroid* factor (8) –

"sophistication of the [consumers]" – weighs in favor of Plaintiff. *See Polaroid Corp. v.*

*Polarad Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir.1961).

## II.    DEFENDANT'S COUNT I – DECLARATORY JUDGMENT OF INELIGIBILITY OF PLAINTIFF'S TRADEMARK

103.    Count I of Defendant's Counterclaims seeks a declaratory judgment that Plaintiff's U.S.

Trademark Application Serial No. 98/124,482 for BLACK WIDOW should be refused

registration. (Dkt. 14 at 17).

104.    U.S. Trademark Application Serial No. 98/124,482 registered as U.S. Trademark

Registration No. 7,466,919 on August 6, 2024. (Dkt. 48-8; Ex. E at 8-9).

105.    Plaintiff filed Application Serial No. 98/124,482 with the United States Patent and

Trademark Office on August 9, 2023. (Dkt. 48-8; Ex. E at 8).

106.    During the examination of Application Serial No. 98/124,482, the United States Patent

and Trademark Office conducted a search of the trademark office database and the

examiner's record of search, including the search logic is found in the file history (Exhibit N

at P001204).  After such search, the examiner did not issue any refusals under Section 2(e)

(mere descriptiveness) or Section 2(d) (likelihood of confusion). (Exhibit N at P001192-

P001214).

107.    U.S. Trademark Application Serial No. 98/124,482 was published for opposition in the

USPTO's Official Gazette on May 21, 2024. (Ex. N at P001193).

108.    No oppositions were filed against U.S. Trademark Application Serial No. 98/124,482

during the application's 30-day publication period. (Ex. N at P001193).

109.    On August 6, 2024, U.S. Trademark Application Serial No. 98/124,482 for BLACK

WIDOW registered on the Principal Register as U.S. Trademark Registration No. 7,466,919.

(Dkt. 48-8; Ex. E at 8-9).

110.    Registration of the BLACK WIDOW mark on the Principal Register reflects the

USPTO's determination, for purposes of registration, that the mark is distinctive and capable

of identifying the source of Plaintiff's services. (See TMEP § 1202).

111.    U.S. Trademark Registration No. 7,466,919 issued without a disclaimer of any portion of

the mark. (Dkt. 48-8; Ex. E at 8-9).

112.    Blake Black testified that black widow spiders are "not prevalent in this part of the

country, Connecticut or New York". (Ex. J, Blake Black Dep. April 23, 2025 at 127:21-

128:2, 128:11-129:4).

113.    On August 27, 2024, Defendant filed a Petition to Cancel U.S. Trademark Registration

No. 7,466,919 with the Trademark Trial and Appeal Board under Cancellation No.

92086092. The Petition did not include any supporting evidence or exhibits. (Exhibit O).

114.    During discovery, Plaintiff served interrogatories on Defendant, including Interrogatory

No. 19, which requested that Defendant "describe in detail any trademarks used by third

parties upon which Defendant will rely in connection with this proceeding." (Exhibit P ¶ 19,

previously marked as PX-34 at Blake Black Dep. Sept. 24, 2024).

115.    Defendant responded to Interrogatory No. 19 on February 28, 2025, and the response was

verified by Blake-Joseph Black, the sole member of Defendant. (Ex. J, Blake Black Dep.

April 23, 2025 at 116:11-20; see also Exhibit P at 10).

116.    Defendant did not supplement or amend the response to Interrogatory No. 19 prior to the

close of fact discovery, before the filing of this Rule 56.1 Statement, or after the response

was presented to Mr. Black during his April 23, 2025 deposition. (Ex. J, Blake Black Dep. April 23, 2025 at 124:6-16).

117.    During his April 23, 2025 deposition, Mr. Black confirmed that Defendant's response to Interrogatory 19 is complete and accurate with respect to third-party trademarks Defendant will rely on in this proceeding. (Ex. J, Blake Black Dep. April 23, 2025 at 124:6-16).

118.    In its response to Interrogatory No. 19, Defendant identified alleged common law marks of four companies: "Black Widow Pest Control, Inc." in Utah, "Black Widow Pest Control Inc." in Indiana, "Black Widow Exterminators, Inc." in Colorado and "Black Widow Pest Management LLC" in Connecticut. (Ex. P at 11).

119.    Blake Black testified that Black Widow Pest Management LLC in Connecticut is out of business. (Ex. J, Blake Black Dep. April 23, 2025 at 117:15-19).

120.    Mr. Black testified that he does not know when Black Widow Pest Control, Inc. in Utah was formed. (Ex. J, Blake Black Dep. April 23, 2025 at 117:22-24).

121.    Mr. Black testified that he has no knowledge of whether Black Widow Pest Control, Inc. in Utah has continuously used the mark "Black Widow" for pest control services for any period of time. (Ex. J, Blake Black Dep. April 23, 2025 at 117:25-118:6).

122.    Mr. Black testified that he does not know when Black Widow Pest Control Inc. in Indiana was formed or first came into business. (Ex. J, Blake Black Dep. April 23, 2025 at 118:7-118:10).

123.    Mr. Black testified that he has no knowledge of whether Black Widow Pest Control Inc. in Indiana has continuously used the mark "Black Widow" for pest control services since the date they first came into business. (Ex. J, Blake Black Dep. April 23, 2025 at 118:11-118:15).

124.    Mr. Black testified he does not know when Black Widow Exterminators, Inc. in Colorado was formed. (Ex. J, Blake Black Dep. April 23, 2025 at 118:16-118:19).

125.    Mr. Black testified that he has no knowledge of whether Black Widow Exterminators, Inc. in Colorado has continuously used the mark "Black Widow" for pest control services for any period of time. (Ex. J, Blake Black Dep. April 23, 2025 at 118:20-119:6).

126.    Mr. Black testified that he has no knowledge of whether Black Widow Pest Control, Inc. in Utah was in business or providing pest control services between April 16, 2013 and June 5, 2014. (Ex. J, Blake Black Dep. April 23, 2025 at 119:13-120:8).

127.    Mr. Black testified that he has no knowledge of whether Black Widow Pest Control, Inc. in Utah offered pest control services in any year since June 5, 2014. (Ex. J, Blake Black Dep. April 23, 2025 at 120:9-120:12).

128.    Mr. Black testified that he has no knowledge of whether Black Widow Exterminators, Inc. in Colorado offered pest control services in any year from 2002 to the present. (Ex. J, Blake Black Dep. April 23, 2025 at 120:13-121:2).

129.    Mr. Black testified that he has no knowledge of whether Black Widow Exterminators, Inc. in Colorado is currently operating or providing pest control services. (Ex. J, Blake Black Dep. April 23, 2025 at 121:3-121:6).

130.    Mr. Black testified that he has no knowledge of whether Black Widow Exterminators, Inc. in Colorado starting using "Black Widow" before Plaintiff. (Ex. J, Blake Black Dep. April 23, 2025 at 121:7-121:19).

131.    Defendant has not subpoenaed any documents from third parties and has not conducted any depositions in this case. (Exhibit Q, J. Winter Decl. ¶ 5).

132.    Defendant has not authenticated any documents from "Black Widow Pest Control, Inc." in Utah, "Black Widow Pest Control Inc." in Indiana, or "Black Widow Exterminators, Inc." in Colorado, nor has Defendant submitted any testimony from representatives of these entities. (Ex. Q, J. Winter Decl. ¶ 6).

133.    Defendant has not submitted any evidence showing that "Black Widow Pest Control, Inc." in Utah, "Black Widow Pest Control Inc." in Indiana, or "Black Widow Exterminators, Inc." in Colorado used the marks "BLACK WIDOW" or "BLACKWIDOW" in connection with termite, pest or wildlife control services prior to Plaintiff's first use, or that any such use has continued through the date of this Rule 56.1 Statement. (Ex. Q, J. Winter Decl. ¶ 7).

134.    In response to Interrogatory No. 18, which asked Defendant to identify persons whom Defendant expects to call as witnesses in this proceeding, Defendant did not identify any witnesses associated with "Black Widow Pest Control, Inc." in Utah, "Black Widow Pest Control Inc." in Indiana, or "Black Widow Exterminators, Inc." in Colorado (Ex. P at 10).

135.    During his deposition, Blake Black confirmed that none of the witnesses identified in Defendant's response to Interrogatory No. 18 are associated with "Black Widow Pest Control, Inc." in Utah, "Black Widow Pest Control Inc." in Indiana, or "Black Widow Exterminators, Inc." in Colorado. (Ex. J, Blake Black Dep. April 23, 2025 at 123:19-124:16).

136.    Defendant's initial disclosures do not identify any witnesses affiliated with "Black Widow Pest Control, Inc." in Utah, "Black Widow Pest Control Inc." in Indiana, or "Black Widow Exterminators, Inc." in Colorado. (Exhibit R at 1-3).

137.    Blake Black testified that he is not aware of any evidence that Plaintiff had knowledge of "Black Widow Pest Control, Inc." in Utah, "Black Widow Pest Control Inc." in Indiana, "Black Widow Exterminators, Inc." in Colorado, or "Black Widow Pest Management LLC"

in Connecticut prior to the filing of this lawsuit. (Ex. J, Blake Black Dep. April 23, 2025 at

116:25-123:9).

138.    Blake Black testified that Defendant has not treated black widow spiders in the course of

providing pest control services to its customers. (Ex. F, Blake Black Dep. Sept. 24, 2024 at

67:5-18; see also Ex. J, Blake Black Dep. April 23, 2025 at 127:21-129:4).

139.    When asked "how many jobs in the last month [Defendant company] has…done with

black widow spiders," Blake Black responded: "none that I can think of because they are not

[on] this side of the country." Mr. Black also confirmed that black widow spiders are not

common pests in Connecticut, that he has not dealt with a black widow spider pest control

job in Connecticut, and that Defendant has zero revenue related to the control of black widow

spiders. (Ex. F, Blake Black Dep. Sept. 24, 2024 at 66:9-67:18; see also Ex. J, Blake Black

Dep. April 23, 2025 127:21-128:23; see also Exhibit S, Michael Camilini Dep. Sept. 26,

2024 at 73:5-21).

140.    The Trademark Trial and Appeal Board proceedings in Cancellation No. 92086092 have

been stayed pending the outcome of this litigation. (Dkt. 69-1).

### III.    DEFENDANT'S COUNT II – COMMON LAW TRADEMARK INFRINGEMENT

141.    Defendant alleges that Plaintiff's use of the Plaintiff's Mark constitutes trademark

infringement under Connecticut common law. (Dkt. 14 at 19 ¶ 31).

142.    Plaintiff's U.S. Trademark Registration Nos. 4,624,108 and 4,624,109 include the words

BLACK WIDOW as part of the registered logo. (Ex. E at 4-7; Dkt. 1-4; Dkt. 1-5; see also

Dkt. 1 at 3 ¶ 11).

143.    Plaintiff has used its BLACK WIDOW marks in connection with pest control services since at least September 2003, and such use has been continuous. (Ex. A, P. Geiger Decl. ¶ 7; see also Dkt. 1 at 6 ¶ 30).

144.    Plaintiff is the owner of several U.S. Trademark Registrations for its BLACK WIDOW marks in connection with pest control services, namely, U.S. Registration Nos. 7,466,919, 4,582,084, 4,624,108, and 4,624,109 (Ex. E; see also Dkt. 48-8; Dkts. 1-3, 1-4 and Dkt. 1-5).

145.    Plaintiff's registrations on the Principal Register constitute prima facie evidence of the validity of the BLACK WIDOW mark, Plaintiff's ownership thereof, and Plaintiff's exclusive right to use the BLACK WIDOW mark in commerce in connection with pest control services. (Ex. E; Dkt. 48-8; Dkts. 1-3, 1-4 and 1-5; see also 15 U.S.C. § 1057(b)).

146.    Defendant does not own, and has never owned, a state or federal trademark registration for the mark BLACK WIDOW. (Ex. F, Blake Black Dep. Sept. 24, 2024 at 53:7-8).

147.    Plaintiff has promoted and offered its BLACK WIDOW pest control services in interstate commerce, including in New York and New Jersey. Additionally, several of Plaintiff's New York-based customers reside in Connecticut and own or manage properties in New York City. (Ex. A, P. Geiger Decl. ¶ 9; Exhibits T and T1; see also Dkt. 1 at 3 ¶ 11, Dkt. 1 at 4-5 ¶¶ 19-22).

148.    Since at least 2003, Plaintiff has invested in advertising, marketing, and promotional materials using the BLACK WIDOW mark. (Ex. A, P. Geiger Decl. ¶ 8).

149.    Defendant's first use of the BLACK WIDOW mark in commerce occurred no earlier than 2021. (Ex. F, Blake Black Dep. Sept. 24, 2024 at 282:17-18; Dkt. 1 at 6-7 ¶¶ 32-34; Dkt. 14 at 4 ¶¶ 32-34). This first use date by Defendant is after the registration of Plaintiff's U.S.

Trademark Registration Nos. 4,624,108 and 4,624,109 and also after the date those marks became incontestable.

150.    At the time Plaintiff selected and began using its BLACK WIDOW mark, Defendant was not in existence, Defendant's alleged BLACK WIDOW mark had not been used in commerce, and Plaintiff was unaware of any third-party use of a similar mark. (Ex. F, Blake Black Dep. Sept. 24, 2024 at 282:17-18; Dkt. 1 at 6-7 ¶¶ 32-34; Dkt. 14 at 4 ¶¶ 32-34; Ex. A, P. Geiger Decl. ¶ 17).

151.    Plaintiff has priority of use of the BLACK WIDOW mark over Defendant. (PJR Hr'g Tr. 12:8-12, 15:2-5; Dkts. 1-3, 1-4 and 1-5; Dkt. 48-8).

152.    Blake Black admitted that his company does not own any trademark rights to the term "BLACK WIDOW". (Ex. J, Blake Black Dep. April 23, 2025 at 126:19-25).

153.    Plaintiff's federally registered BLACK WIDOW marks have been declared incontestable under 15 U.S.C. § 1065 following continuous use for five consecutive years and proper filings with the United States Patent and Trademark Office. (Ex. E at 4-9; Dkt. 48-8; Dkt. 1-4; Dkt. 1-5; Dkt. 14 at 4 ¶¶ 26-27; see also 15 U.S.C. § 1065).

154.    The word "deny" does not appear in Defendant's response to Paragraphs 26 and 27 of the complaint and thus Plaintiff owns U.S. Trademark Registration Nos. 4,624,108 and 4,624,109 for the BLACK WIDOW marks and that both registrations have been deemed incontestable by the United States Patent and Trademark Office. (Dkt. 14 at 4 ¶¶ 26–27; Dkt. 1 ¶¶ 26–27).

155.    Under Rule 8(b)(6) of the Federal Rules of Civil Procedure, Defendant's failure to deny the allegations in Paragraphs 26 and 27 of the Complaint constitutes an admission that

Plaintiff owns U.S. Trademark Registration Nos. 4,624,108 and 4,624,109 and that both
marks are incontestable. (Fed. R. Civ. P. 8(b)(6)).

156.    Defendant has not served a damages report in this action, despite the Court's Scheduling
Order setting a deadline for such report, and that deadline has passed. (Dkt. 46).

## IV.    DEFENDANT'S SECOND AFFIRMATIVE DEFENSE

157.    Defendant alleges that Plaintiff "knowingly and falsely presented the '084 trademark
with all of the rights of a mark registered on the primary register" (Dkt. 14 at 9). However, in
the parties' letter correspondence, Plaintiff did not state that the '084 trademark was
registered on the primary (i.e., Principal) Register. (Ex. C). Defendant's own response letter
identified the '084 trademark as registered on the Supplemental Register. (Exhibit U,
previously marked as PX-14 at Blake Black Dep. Sept. 24, 2024). Additionally,  Plaintiff's
Complaint accurately references the '084 trademark by registration number, attaches a copy
of the registration, and does not state that it is registered on the primary (i.e., Principal)
Register. (Dkt. 1 at ¶25; Dkt. 1-3).

## V.    DEFENDANT'S NINTH AFFIRMATIVE DEFENSE

158.    Plaintiff is licensed by the State of Connecticut to provide wildlife management services.
(Ex. A, Aff of P. Geiger ¶ 12; Exhibit W at P000443).

## VI.    DEFENDANT'S TENTH AFFIRMATIVE DEFENSE

159.    Defendant confirmed under oath that its company has received calls from customers who
were intending to reach Plaintiff. (Ex. F, Blake Black Dep. Sept. 24, 2024 at 291:14-17).

160.    Defendant received a call from a prospective customer who was attempting to reach
Plaintiff. (Exhibit K at 1-2, previously marked as PX-23 at Blake Black Dep. Sept. 24, 2024).
Blake Black admitted that the caller could only have been someone intending to contact

Plaintiff who mistakenly reached Defendant (Ex. J, Blake Black Dep. April 23, 2025 at 30:11-34:8).

161.    Defendant received a text message from a pest control industry professional containing a photograph of Plaintiff's logo displayed on pest control glue board and/or snap trap found at a job site. The individual inquired whether the materials were associated with Defendant's work, when in fact they belonged to Plaintiff. (Exhibit K at ARM-BLACK-000123, previously marked as PX-24 at Blake Black Dep. Sept. 24, 2024).

162.    Defendant confirmed under oath that the logo depicted in the photograph received via text message from Jim Horton (Ex. K at ARM-BLACK-000123, previously marked as PX-24 at Blake Black Dep. Sept. 24, 2024) was Plaintiff's logo. (Ex. F, Blake Black Dep. Sept. 24, 2024 at 188:16-19).

163.    Defendant admitted that he conducted no investigation into the origin of the glue board/snap trap bearing Plaintiff's logo. (Ex. F, Blake Black Dep. Sept. 24, 2024 at 188:20-189:1).

## VII.    DEFENDANT'S TWELFTH AFFIRMATIVE DEFENSE

164.    Defendant's principal does not have the surname "BLACK WIDOW" or "BLACKWIDOW". (Ex. F, Blake Black Dep. Sept. 24, 2025 at 50:14-21, 283:10-18). Defendant uses the term "BLACK" in its "BLACK WIDOW" branding as part of a trademark, not as a surname or to describe any specific pest control services offered by Defendant. (Ex. F, Blake Black Dep. Sept. 24, 2025 at 284:4-6; 66:9-67:18; see also Ex. J, Blake Black Dep. April 23, 2025 at 127:21-128:23).

Dated: June 18, 2025

**FARBER, LLC**

By ___/s/ Jonathan A. Winter_____
Jonathan A. Winter
4 Corporate Dr, Ste 287
Shelton, CT 06484
Tel: (203) 286-8356
Email: j.winter@farberllc.com
***Counsel for Black Widow Termite & Pest Control Corp.***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing is being served via ECF.

06/18/2025                                        /s/Jonathan A. Winter_____

Date                                                   Jonathan A. Winter